The Territory of Minnesota, *ex rel.* of Edward F. Parker, and said Edward F. Parker *vs.* Segrave Smith.

#### WRIT OF ERROR TO THE DISTRICT COURT OF DAKOTA COUNTY.

The Constitution of the State was not operative until after its adoption, and did not change any rights, duties, requirements or obligations that were created by or dependent upon any Territorial act, until it had received the sanction of its adoption by the people, and a six months' residence in the Territory was necessary to the eligibility of a District Attorney at the October election of 1857, that office being created under a Territorial law.

The qualification of residence of a candidate for office should be consummate at the time of the election, and it will not do that the period of probation is completed before the party qualifies or enters upon the duties of the office.

The *Revised Statutes, page* 58, *Sec.* 7 *to* 12 *inclusive,* allow two separate and dissimilar interests to be inserted in the same action; the one, that of the Territory, in preventing any one not duly chosen, from exercising official functions; the other, private in its nature, as to who shall exercise them and enjoy the emoluments thereof; and the cause of action is perfect against the Defendant if the private interests are not united.

The complaint, as amended, alleges substantially the following facts:

That at a general election held October 9th, 1855, under the laws of the Territory, Edward F. Parker, the relator, was elected to the office of District Attorney of Dakota County for the term of two years, and until his successor was qualified, and was then eligible to said office, and afterwards qualified, &c., according to law; that he has never resigned, removed from said Dakota County, refused to act, or been removed from office, and that no successor had been elected or qualified thereto.

That the Defendant, Segrave Smith, on the 13th October, 1857, without authority of law, was voted for for the office aforesaid, and on the 6th January, 1858, gave bond and qualified therefor, and entered upon the discharge of the duties of said office. That on the day of said election, to wit, October 13, 1857, the Defendant was not eligible to said office, as he had not resided in said Territory six months next preceding said day of election; that he became a resident of said Territory on the 30th May, 1857, and had exercised the rights of citizenship in the State of Ohio on the 6th April, 1857.

The action was commenced by the Attorney General for the Territory, and was afterwards amended by adding the name of the relator as a Plaintiff.

The Defendant demurred to the complaint, as amended, upon the following grounds:

*First.*—That there was a defect of parties Plaintiff.

*Second.*—That it appears that the Defendant had resided in the State six months before he qualified for the office and entered upon the discharge of its duties.

The District Court, (N. M. Donaldson, J.,) sustained the demurrer, and judgment was entered thereon in favor of the Defendant.

The Attorney General and the Relator sue out the Writ of Error.

[The points and authorities of Counsel for the Plaintiff are not on file.]

The following are the points and authorities relied upon by the Counsel for the Defendant:

*First.*—The causes of demurrer are sufficiently stated—they conform strictly with the statute and are in accordance with practice.

The statute only requires the party demurring to specify which one of the six grounds of demurrer enumerated in the statute he intends to rely upon. If it is stated in the language of the statute, it is sufficient, especially where it appears that the demurrer goes to the merits of the cause as in this instance, or where under the common law practice a general demurrer would lay. *Rev. Stat. p.* 337.

Our statute is substantially the same on that subject as the New York Code. 3d *Ed. Vorh.'s New York Code, p.* 115, *Sec.* 145.

That is the construction given to the code by the Courts of New York, and the rule is now well settled in that State. *Johnson vs. Witman,* 12 *Barb.* 433; *Daucty vs. Bennett,* 7 *How. P. R.* 375; *Hudson River R. R. Co. vs. Gitty,* 8 *How. P. R.* 117; *Hogland vs. Hudson, Ibid.* 343; *Havie vs. Baker,* 1 *Selden R.* 357.

*Second.*—The first cause of demurrer assigned is well taken,

and the Court below did not err in sustaining it. The complaint shows no cause of action against the Defendant.

*Third.*—The complaint shows that the Defendant had resided in the Territory and State more than six months before he qualified and entered on the duties of the office, or before he was required to by law.

The Defendant did not become an officer until he qualified; having resided in the State six months previous to that time, he was eligible to hold the office even under the Territorial statutes.

*Fourth.*—The second cause assigned for demurrer is sufficient. The complaint does not show that the Plaintiff, Edward F. Parker, has any interest in the action whatever. It shows that he was elected to the office in question in October, 1855; that there was another election to fill the same office in October, 1857, but does not show that the Plaintiff, Parker, was elected, or even voted for at that time; neither does it appear but what some person other than the Defendant was voted for and elected to the same office in October, 1857, and had qualified therein, and that the Defendant is holding the office (if wrongfully) against the right of such other person. The statute requires the District Attorney to be elected every two years at the general election held in October. *Rev. Stat., p.* 69, *Note 5, Sec.* 1; *Ib. p.* 53, *Sec.* 45. The presumption of law is that the people did what the law required them to do, to wit: elect a District Attorney in October, 1857, and that he qualified. Courts cannot presume against law; in the absence of any facts to show to the contrary, the Court is to presume that there was some person elected and qualified in said office in 1857, and that the Plaintiff, Parker, has no title to the office in question, and has no interest in this action, and should not have been made a party thereto. 3 *Philip on Evidence, part of Cow. & Hill's Notes, p.* 461 *and cases therein cited;* 1 *Greene E., Sec.* 40.

*Fifth.*—The Court did not err in not allowing the Plaintiffs to amend their complaint.

It was a decision of the merits of the action upon a statement of all the facts in the case; if the demurrer had been sus-

tained on the ground of an informality in the statement of the facts which could have been remedied by an amendment, the rule for the Court below might have been otherwise. In any event, it was a decision on a question of practice, was wholly within the discretion of the Court, and is not an appealable order. The question whether the Court below erred in not allowing an amendment cannot be reviewed by this Court. *Rev. Stat.*, *p.* 340, *Sec.* 28 *and amend. p.* 9, *Sec.* 89; *Rowley vs. Van Rutheysen*, 16 *Wend.* 369; *Foot vs. Bard*, 1 *Coms.* 43; *Schumerhorn vs. The Mohawk Bank*, *Ibid.* 125; *Lansing vs. Russell*, 2 *Ibid.* 563; *Caudee vs. Lord*, 2 *Ibid.* 269; *King vs. The Merchants' Exchange Co.*, 1 *Selden* 547.

E. F. PARKER, in person, and L. EMMETT, Attorney General.

L. & S. SMITH, Counsel for the Defendant.

*By the Court*—FLANDRAU, J.  During the Territorial existence of Minnesota, a residence of six months in the Territory was necessary to the eligibility of any officer under its laws. *Laws of* 1854, *p.* 104, § 3.

When a Constitution was formed preparatory to becoming a State, a different rule was adopted, which cut down the necessary period of residence to four instead of six months. *Const.*, *Art.* 7, §§ 1 *and* 7.  But the Constitution was not operative until after its adoption by the people, and did not change any rights, duties, requirements or obligations that were created by or dependant upon any Territorial act, until it had received such sanction. All elections of officers, and every innovation upon the Territorial form of government made by the Constitution were necessarily dependent and conditioned upon its adoption by the people.

At the election in October, 1857, at which the Constitution was submitted, there were two distinct elections, although held on the same day and at the same places for convenience. This was absolutely necessary in the event of the Constitution being rejected by the people, in which case all the votes cast for any of the officers created by the Constitution would have been of no effect, and the whole State scheme would have fallen to the

ground, and the Territorial form of government would have continued as if no such election had taken place, and all the officers, from Delegate to Congress to those of precinct jurisdiction, elected under Territorial laws, would have entered upon their functions precisely as they did the previous year. It cannot be said, therefore, that the Constitution or any of its provisions in any manner changed or influenced either the eligibility of the candidates for such offices, or the qualifications of the electors who voted for them. Nor do its words import any such intention. The Constitution is for the State, not for the Territory, and when *Section* 1 *of Art.* 7, after saying who shall vote, adds, " for all officers *that now are*, or hereafter may be elective by the people," it has reference to a time after it shall have become a Constitution, vested with authority, and has reference to all officers then to be elected, whether under Territorial laws or its own provisions : the six months residence qualification then yields to the four, as prescribed by that section, but not before. It follows that a six months residence in the Territory was necessary to the eligibility of a District Attorney elected at the October election of 1857, the office being created under a Territorial law. *R. S., p.* 69.

This qualification of residence should be consummate at the time of the election, and it will not do that the period of probation is completed before the party qualifies or enters upon the duties of the office. This must be so, or different periods of residence would suffice for the same office under different circumstances of election. When a person is elected to a Territorial county or precinct office for the regular term, his duties do not commence until the succeeding January; but when elected to the same office to fill a vacancy, he qualifies and enters upon the duties of the office at once. *R. S., p.* 53, §§ 45 *and* 46. It cannot mean that a longer time of residence is necessary for an officer who is elected to fill a vacancy than is requisite for him to fill the full term, yet such would be the inevitable result if the doctrine contended for by the Defendant in Error should prevail.

The Defendant in Error not having resided within the Territory six months prior to the election of 1857, was not eligible to fill the office of District Attorney.

Parker v. Smith.

The Attorney General is empowered to bring an action on his own information, or upon the complaint of a private party, against any one who usurps, intrudes into or unlawfully holds or exercises any public office, civil or military.  *R. S., p.* 411, § 5.  The statute very wisely makes provision, not only to settle the question of the right of the Defendant to the office he seeks to hold, but allows any person interested to be joined with the Territory as a Plaintiff, and the whole question of the rights of both parties to be settled in the action, so that the usurper may be ousted and the claimant installed.  Judgment may also be rendered in the action for the damages the claimant may have sustained by the usurpation of his rights.  *Ib., p.* 53, §§ 7 *to* 12, *both inclusive.*

There are two separate and dissimilar interests allowed to be united in this action.  The one, that of the Territory, in preventing any one not duly chosen from exercising official functions, the other, private in its nature, as to who shall exercise them, and enjoy the emoluments thereof.

The cause of action is perfect against the Defendant, if the private interests are not united, and if joined and defectively averred, there might be a misjoinder of parties Plaintiff.  The complaint clearly avers the ineligibility of the Defendant, and we think shows the Plaintiff entitled to hold the office.  It alleges his election in 1855, which would make his regular term end on the 1st day of January, 1857.  *R. S., p.* 53, § 45, *p.* 69, § 1; but should no one be elected and qualify at the succeeding election, he would hold over.  *R. S., p.* 85, § 5.  The complaint alleges that no one was elected as a successor, and also that he has not otherwise lost the office by resignation, removal, or disqualification; these allegations leave him entitled to hold it; the votes cast for the Defendant could in no way influence his rights to continue after the expiration of the regular term and until his successor is elected and qualified.

The Court below clearly erred in sustaining the demurrer to the amended complaint, and the judgment thereon is reversed, and case remanded.

Emmett, Ch. J., having been Attorney General for the Territory, took no part in the decision of this cause.