STATE OF WISCONSIN and another vs. TRUMPF.

*May 15 — September 21, 1880.*

CONSTITUTIONAL LAW.    *Right of non-eligible person to hold office on removal of his disability.*

1. The doctrines that a person not an elector of this state cannot hold a public office therein *(State ex rel. Off v. Smith*, 14 Wis., 497), and that, in the absence of any constitutional or statutory provision on the subject, one who has received a plurality of votes for an office, though an alien and not an elector at the time of his election, may hold his office if the

State of Wisconsin and another vs. Trumpf.

disability is removed before the commencement of the term for which he is elected *(State ex rel. Schuet v. Murray,* 28 Wis., 96), adhered to.

2. A city charter declares that persons elected to city offices shall enter upon the duties of such offices *on a day named,* but further provides that "when any such officer shall refuse or neglect, for ten days after notice of his election or appointment, to qualify and enter upon the discharge of the duties of his office, the office shall be deemed vacant." *Held,* that if the person elected has his legal disability removed before the close of the "ten days after notice of his election" (though that may be *after the day previously named),* he is then entitled (having otherwise qualified) to enter upon and hold the office.

APPEAL from the Circuit Court for *Milwaukee* County.

This action, in the nature of a *quo warranto,* was founded on the following complaint:

"The complaint of the above-named plaintiffs against the above-named defendant respectfully shows, that at an election held in the city of Milwaukee on the first Tuesday in April, 1878, said defendant was elected treasurer of the city of Milwaukee for the official term of two years then next ensuing, according to the provisions of the charter of said city, and that he qualified, and entered upon the discharge of the duties of said office; that at the annual municipal election held in said city of Milwaukee, according to law, on the first Tuesday of April, 1880, said defendant was a candidate for reëlection, and said plaintiff *Albert B. Geilfuss* was also a candidate for said office of city treasurer for the official term then next ensuing; that said defendant received at such election five thousand five hundred and eighty-eight (5,588) votes, and said plaintiff *Albert B. Geilfuss* eight thousand nine hundred and seventy-two (8,972) votes; that they were the only persons voted for for said office, and said plaintiff received a majority of three thousand three hundred and eighty-four (3,384) votes for the same; that said votes were duly canvassed by the common council of the city of Milwaukee on the 12th day of April, 1880, and said plaintiff *Albert B. Geilfuss* was then and there duly declared elected to said office, and was, on the 13th day of

State of Wisconsin and another vs. Trumpf.

April, 1880, duly notified of said election; that said plaintiff, on the 19th day of April, 1880, duly filed in the office of the clerk of said city his official bond as treasurer of said city, for the term of office then next ensuing, with good and sufficient sureties, and duly executed, witnessed and acknowledged, as required by law; that said plaintiff is a native of Germany; that he came to said city of Milwaukee in the year 1853 with his parents, he being then six years of age; that he has resided in said city ever since that time, and does now there reside; that long before his majority his father declared his intention to become a citizen of the United States in due form of law, and thereafter continuously exercised the rights of an elector in the state of Wisconsin; that on the 21st day of April, 1880, said plaintiff was duly admitted to citizenship of the United States, in the municipal court of Milwaukee county, in due form of law; that afterwards, and on the same day, he took and subscribed the oath of office as such treasurer, prescribed by law and the constitution of this state, and filed the same, duly certified by the officer who administered the same, with the clerk of said city; that thereafter, and on the same day, the common council of said city, then and there being in regular and lawful session, by resolution duly passed, accepted and approved said official bond filed by said plaintiff; that thereafter, and on the 22d day of April, 1880, said *Albert B. Geilfuss* demanded of said defendant, then still in the possession of said office, that he deliver the said office, and all the books, papers and property thereto belonging, to him, the said *Geilfuss*, which said defendant then and there refused, and still doth refuse to do. And the plaintiff shows that said defendant does unlawfully hold and usurp the said office. Wherefore the plaintiffs demand judgment that said defendant is not entitled to said office, and that he be ousted and excluded therefrom, and that said plaintiff *Albert B. Geilfuss* is entitled thereto, and to all the rights and emoluments thereof, and for costs against the defendant."

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action; and from an order sustaining the demurrer, plaintiff appealed.

Chapter II of the city charter of Milwaukee (Laws of 1874, ch. 184, p. 314) contains the following provisions, which are referred to in the opinion:

" Section 2. The annual municipal election in said city shall be held on the first Tuesday in April of each year. . . .

" Sec. 3. . . . The mayor, treasurer, comptroller and attorney shall be elected on the first Tuesday of April, A. D. 1874, being the first municipal election under this act, and biennially thereafter. The officers so elected shall enter upon the duties of their respective offices on the third Tuesday of April in the year of their election, and shall hold their respective offices for the term of two years, and until their successors shall be elected and qualified.

" Sec. 8 (as amended by section 3, ch. 144, Laws of 1875). . . . All persons entitled to vote for county or state officers, and who shall have resided in the city for one year next preceding the election, and for ten days in the ward where they offer to vote, shall be entitled to vote for any officer to be elected under this act, and to hold any office thereby created.

" Sec. 12. . . . Within one week after any election the common council shall meet and canvass said returns, and declare the result as it appears from the same, and the clerk shall forthwith give notice of his election to each officer elected.

" Sec. 13. . . . In case of a tie vote, . . or when any officer elected or appointed for the city shall remove his residence without the limits of the city, . . or when any such officer shall refuse or neglect, for ten days after notice of his election or appointment, to qualify and enter upon the discharge of the duties of his office, the office shall be deemed vacant."

State of Wisconsin and another vs. Trumpf.

For the appellants there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Winkler:*

1. The election was not void because of the alienage of the relator, but the disqualification could be removed afterward. *State ex rel. Schuet v. Murray*, 28 Wis., 96; McCrary on Elections, § 258; Cushing's Law of L. A., sec. 83. This is the general rule, and it is not changed as respects city officers by sec. 3, ch. 144 of 1875. The qualifications for holding office prescribed by that section relate, not to the date of the election, but to the time of assuming the functions of the office. This is apparent from the fact that very many of the offices to which they apply are not elective, but subject to appointment. 2. That the time prescribed by law for the commencement of his term of office had elapsed before qualification, does not affect the relator's right. The law gave him ten days *after notice*, in which to qualify and enter upon his official duties. Within that time his disability was removed, and he demanded his office. The demand was in time, and the demandant fully qualified.

For the respondent there was a brief by *Stark & Brand*, and oral argument by *Mr. Stark:*

1. By sec. 3, ch. 144 of 1875, the right to vote and to hold office are so connected that it would seem that the latter must depend upon the candidate's right to vote and one year's prior residence in the city, *at the time of the election.*

2. The cases holding that disability of a candidate may be removed after election, go no further than to affirm that if the disqualification be removed in time so that the person elected can enter upon and lawfully hold the office *at the commencement of the official term*, as fixed by law, he will be deemed eligible. But the relator's ineligibility was not removed until after the official term had commenced. It is claimed that the charter provision giving ten days after notice of election in which to qualify, operated to extend the time. But the word "qualify," as here used, has a well defined meaning. It means

simply the doing of those things required by law previously to entering upon the duties of an office, such as taking the oath, filing a bond and the like; and has no reference to the removal of political disability. R. S., secs. 4971–2; City Charter, ch. 2, secs. 3, 4 and 6; ch. 5, secs. 1 and 3; ch. 20, sec. 10; McCrary on Elections, secs. 218, 220, 246; Cushing's Law of L. A., § 469; Dillon on M. C., § 135; 20 Cong. Globe, sp. sess. 1849, pp. 327, 332, 350; *Case of Shields*, 1 Bart. Election Cas., 606; *In re Conway*, 17 Wis., 526; *Case of Blair*, U. S. Sen.; 29 Me., 531; *Gates v. Delaware Co.*, 12 Iowa, 405; *State ex rel. Finch v. Washburn*, 17 Wis., 658.

The following opinion was filed May 27, 1880:

LYON, J.   Only two cases have been adjudicated by this court which have any direct bearing upon the questions to be determined on this appeal. These are *State ex rel. Off v. Smith*, 14 Wis., 497, and *State ex rel. Schuet v. Murray*, 28 Wis., 96.   In the first of these cases it was held to be a fundamental principle of our government that a person not an elector of the state is ineligible to hold a public office therein, although our constitution and statutes do not expressly so ordain.   In the latter case it was held that, in the absence of any constitutional or statutory provision on the subject, such ineligibility goes only to the *holding* of the office, and hence that, if an alien who is not an elector receives a plurality of votes for an office, he may lawfully hold and exercise the same, if, by naturalization or declaration, his disability is removed before the commencement of the term of office to which he has been elected.

It is obvious that these cases are not in conflict.   In the former the disability of the defendant Smith, who had received a plurality of votes for the office of sheriff, had not been removed when the action was brought, which was after the term of office had commenced.   In the latter case the disability was removed before the commencement of the term,

and the point decided was not involved in the former case, and is not mentioned in the opinion by the late chief justice. Instead of conflicting, the two cases are in perfect accord; the latter adopting to its full extent the rule of the former. The court adheres to both decisions.

It is claimed that in this case the rule of the *Schuet Case* has been changed by section 3, ch. 144, Laws of 1875, p. 249, quoted in the statement of the case. We do not think so. That section merely specifies the qualifications of voters for city and ward officers, and provides that such voters shall be entitled to *hold* any office created by the act. It is not perceived that these provisions affect the rule of the *Schuet Case.* Had the section provided that such voters should be entitled *to be elected* to any charter office, there might be some ground for the claim that the principle of that case is not applicable here.

The main question in the case is, whether the disqualification of the plaintiff *Geilfuss* to hold the office of city treasurer was removed in time to entitle him to hold it. That is to say (adopting the phraseology of the *Schuet Case*), was he admitted to citizenship before the term of office commenced? The election was held April 6th, and the votes were canvassed by the common council and the result ascertained April 12th, which was within the time limited therefor by the city charter. *Geilfuss* was duly notified of his election April 13th. He was admitted to citizenship, and thereby became a voter of the city, April 21st, and afterwards, on the same day; duly filed his official oath and bond; and on the next day, April 22d, he demanded the office of the defendant, who refused to surrender the same to him.

Section 3 of chapter II. of the city charter (Laws of 1874, ch. 184, p. 314), provides that the persons elected to certain city offices (the office of city treasurer being one of them) "shall enter upon the duties of their respective offices on the third Tuesday of April in the year of their election, and shall

hold their respective offices for the term of two years, and until their successors shall be elected and qualified."

If the charter contained no other provision on the subject, it would seem that the above provision fixes the commencement of the term of office of the treasurer and other officers named, absolutely on the third Tuesday in April, which, in April last, was the 20th day. In that case the removal of the disability of *Geilfuss* on the 21st 'day of that month would have been too late. But section 12 of the same sub-chapter of the charter in effect provides that a person elected to any such office shall have ten days after he is notified of his election, in which to qualify; and also provides that the office shall be deemed vacant in case the person elected thereto fails to qualify within that time. The clear intent and meaning of the provision is, that there is no vacancy in the office until the expiration of the ten days after notice, unless, perhaps, as was the case in *State ex rel. Finch v. Washburn*, 17 Wis., 658, the person elected should before that time positively refuse to qualify for or accept the office.

These two sections are *in pari materia*, and must therefore be construed together. Thus construed, we are of the opinion that the term of office of the city treasurer does not necessarily commence on the third Tuesday in April, but that it may commence on that day, or on any day thereafter within ten days after the notice of election is given to the treasurer elect, pursuant to the charter. There is no vacancy until the ten days have elapsed, and we think it cannot be successfully maintained that the new term has commenced until there would be a vacancy in case the officer elect should fail to qualify. The term of the incumbent continues, and he holds the office as of that term, until the time given by the charter to his successor to qualify has expired. If his successor does not qualify within that time, or, perhaps, if before the expiration of that time he absolutely refuses to accept the office, as the same must be filled by some one, the charter designates the

incumbent as the person who shall fill it; but he then holds as of the new term, and only until some one can be elected to serve the balance of such term.

So, in the present case, notwithstanding *Geilfuss* (if under no disability) might have qualified and entered upon the duties of the office on the 20th of April, and had he done so his term of office would then have commenced, still we are all of the opinion that, inasmuch as the law gave him until the 23d of that month, inclusive, in which to qualify, it was competent for him to do so on the 21st, and that his official term did not commence until he so qualified.

It follows from these views that, under the averments of the complaint, *Geilfuss* was a voter and eligible to hold the office of city treasurer when his term of office commenced. Hence the case is ruled by the judgment in *State ex rel. Schuet v. Murray.*

This case was placed upon the present calendar and heard at this term at the request of both parties. Although our decision is adverse to the defendant, it is but justice to him to say that his consent to have the cause decided many months before it could have been heard in the regular course of practice, is evidence that he has made this contest in good faith, and for the sole purpose of obtaining an authoritative determination of the right of *Geilfuss* to the office before surrendering to the latter so important a public trust.

*By the Court.*— The order of the circuit court sustaining the demurrer to the complaint is reversed, and the cause will be remanded for further proceedings according to law.

The following opinion was filed September 21, 1880, on a motion for a rehearing:

RYAN, C. J. I did not hear the argument of this appeal, but I have read and considered the argument for a rehearing, filed by the learned counsel for respondent, with the attention

State of Wisconsin and another vs. Trumpf.

which its ability and earnestness deserve, and I fully concur with the court in the judgment pronounced.

· I regret the rule in *State v. Murray*, 28 Wis., 96. I think it would have been far more in accord with the doctrine of *State v. Smith*, 14 Wis., 497, and with principle, to have held that one receiving votes for office should then be eligible, so that the validity or invalidity of the votes should not be dependent on subsequent accident, but should then, so to speak, attach to him. I cannot but think the distinction taken in that case between eligibility to election to office and eligibility to hold office too nice to enter into a rule of judicial decision. But *State v. Murray* was decided nearly ten years ago, has ever since been the rule of eligibility to office in the state, and should not now be overruled on light grounds. In such a case, it is better that the rule should be permanent than that it should be abstractly correct. Where there is no flagrant violation of principle, it is better to accept rules of long standing than to hold them open to perpetual inquiry into their original correctness.

It was held in *State v. Murray* that a candidate for office need not be eligible at the time of the election. And it seems to be very immaterial, in principle as well as in practice, at what subsequent time he should become eligible, so that he become so in time to take the office. It appears to be quite immaterial whether he become so before or after the term of his office technically commences, provided he become so within the time limited to him by law to enter upon the duties of his office.

*By the Court.*— The motion for rehearing is denied.