[No. 11933. Department Two. — August 26, 1887.]

# THE PEOPLE EX REL. E. C. MARSHALL, ATTORNEY-GENERAL, RESPONDENT, v. THOMAS LEONARD, APPELLANT.

PUBLIC OFFICE — FEDERAL OFFICIAL CANNOT HOLD STATE OFFICE — CONSTITUTIONAL LAW. — The word "eligible," as used in section 20 of article 4 of the constitution, providing that "no person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under the state," refers to the capacity to hold as well as to be elected to office; consequently, a person who was duly eligible and elected to a civil office of profit under the state can no longer hold that office after he has accepted and is in the incumbency of a lucrative federal office.

ID. — LUCRATIVE OFFICE — CIVIL OFFICE OF PROFIT. — Under the proviso in that section of the constitution, to the effect "that officers in the militia who receive no annual salary, local officers or postmasters whose compensation does not exceed five hundred dollars per annum, shall not be deemed to hold lucrative offices," the words "lucrative office" refer solely to the office under the United States; and if the salary of that office exceeds five hundred dollars per annum, its incumbent cannot hold any civil office of profit under the state, notwithstanding the profit of the state office is less than five hundred dollars per annum.

APPEAL from a judgment of the Superior Court of Tuolumne County.

The facts are stated in the opinion.

*F. D. Nicol*, for Appellant.

*Attorney-General Johnson*, for Respondent.

FOOTE, C. — This action was instituted for the purpose of having the office of supervisor of the first district of Tuolumne County declared vacant.

The court below gave judgment in accordance with the prayer of the complaint, and from that the defendant has appealed.

It appears that he had been duly elected by the people of his district to the office of supervisor thereof, and had held it for some months, receiving for his services less

than five hundred dollars a year as salary, and that then he was appointed to the office of postmaster of the city of Sonora, which is a lucrative office under the United States. It is contended by the relator in support of the judgment (although the defendant was eligible to the office of supervisor at the time he was elected to fill it, and he held it legally and properly up to the time when he was appointed to and held the office of postmaster), that the moment he thus accepted the latter office he became an unconstitutional holder of the office of supervisor, and that the same at once became vacant, and subject to be so declared by the proper court, under section 20, article 4, of our state constitution.

That section reads as follows:—

"No person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this state; *provided,* that officers in the militia who receive no annual salary, local officers or postmasters whose compensation does not exceed five hundred dollars per annum, shall not be deemed to hold lucrative offices."

In seeking to interpret the meaning of a constitutional provision, it is proper always that the intent of the framers of such an instrument should, if possible, be ascertained and carried out. Upon looking at the section under discussion, we find it the same as originally passed by the convention of 1849.

The primary matter, as shown in the first clause of the section, to which the minds of the members of that and succeeding constitutional conventions seem to have been addressed, was to make ineligible to any state civil office of profit any person who held a lucrative office under the United States, or any other power. The main object, then, must have been to prevent a conjunction of a federal and state office of profit in the same person, without any condition whatever; then the inconvenience of so arbitrary a rule was thought of; and thence came the

determination to exempt from the terms " civil office of profit," or " lucrative office," officers in the militia to whose positions no salary is attached, and local officers and postmasters who did not receive, by way of compensation, more than five hundred dollars per annum.

If the section in controversy can be so construed as to permit the holder of a civil office of profit under the state to be appointed to and hold at the same time a lucrative office under the United States, then the prime object of the members of the constitutional convention which made such section a part of the law of the land, viz., the prevention of dual office-holding by one person under two separate and distinct governments, and the separation of the allegiance justly due one by its officers from that due to another power, would be defeated, and the earnest intentions of that body rendered utterly abortive.

In addressing himself to the discussion of such a matter as the one now in hand, the distinguished Chief Justice Ryan, in *State* v. *Trumpf*, 50 Wis. 112, after deploring the fact that it had become the law of that state, through successive decisions of its court of last resort, that " eligibility " in the constitution of that commonwealth meant eligibility to hold office, and not eligibility to be elected thereto, was constrained to say this,—that " the distinction between eligibility to election to office and eligibility to hold office is too nice to enter into a rule of judicial decision."

So it appears to us that when we come to consider the motive which must of necessity have actuated the constitutional assembly that enacted the provision which we are considering, and the cogent and powerful reasons which would occur to the mind of any earnest thinker why such a restriction should be placed on the holding of office by one man at the same time under more than one government (such as that it would tend, if the duties of both offices were onerous, to the neglect of one or

both, or to the undue influence of the office-holder as a powerful agent of some ambitious President or head of a department, if the federal office was a lucrative one, and the like), that it was clearly intended that one holding "a lucrative office" under the United States,—should not hold a " civil office of profit " under the state.

The case of *Searey* v. *Grow*, 15 Cal. 121, which is cited to us as declarative of the proposition that " eligibility," as used in our constitution, does not mean incapacity to hold, but incapacity to be elected to, a civil office of profit under the state while holding a lucrative federal office, does not, as we understand it, go to the extent claimed, for there the question involved was, whether or not the holder of a lucrative federal office was eligible *for election* to a state office, and therefore the language used in that case, in so far as it does not directly apply to the point actually submitted for decision, is but *obiter dictum.*

And we are not without authority as to the correctness of the view which we take of the meaning of the word " eligibility," as used in the text of the state constitution, although there is no case to which we have been enabled to have access, which involves the precise question in issue here,—that is, whether one duly eligible and elected to a civil office of profit under the state can be permitted to hold that office after he has accepted and is in the incumbency of a lucrative federal office.

The nearest approach to it is that of *State of Nevada ex rel. George A. Nourse* v. *Robert M. Clarke*, 3 Nev. 566. There it appeared that Clarke was United States district attorney for the state of Nevada when he was elected to the office of attorney-general of the state. The constitution of that state is similar in its language to ours upon the point under review, being as follows:—

" No person holding any lucrative office under the government of the United States, or any other power, shall be eligible to any civil office of profit under this state; *provided*, that postmasters whose compensation

does not exceed five hundred dollars per annum, or commissioners of deeds, shall not be deemed as holding a lucrative office."

That court used this language in determining the meaning to be attached to the word " eligible," as used in the Nevada constitution:—

" We agree with the defendant that the framers of the constitution intended to prohibit one who was holding a lucrative federal office from holding a state office at the same time. But instead of restricting the meaning of the word 'eligible,' as defendant contends, we think, to carry out the intention of the constitutional convention, we ought to give it a more extended signification than is generally given, and hold that it means both 'incapable of being legally chosen,' and 'incapable of legally holding.' "

And we have found upon investigation that in very many, if not all, of the various state constitutions the principle seems to have been incorporated and adopted of prohibiting the holding by one person at the same time of a lucrative federal office and any one of the more important state offices.

And in most of such constitutions the word "eligible" has (as it appears to us) been made use of, as it is in our constitution, in a broad and far-reaching sense.

In the case of *Carson* v. *McPhetridge*, 15 Ind. 327, this is said: " The term ' eligible,' as used in our constitution, relates to capacity of holding as well as capacity of being elected to an office."

In *Brady* v. *Howe*, 50 Miss. 626, " eligibility " is defined to mean capacity to take and hold an office; " one not eligible," to mean one disqualified from taking and holding.

And in *State ex rel. Schuet* v. *Murray*, 28 Wis. 99, " the term ' ineligible ' means as well disqualification to hold an office as disqualification to be elected to an office."

And so it will be found upon examination that in

nearly all, if not all, of the cases where " eligible " was said to mean capacity to be elected to an office, and not capacity to hold it, the party seeking to hold the office was declared not to be eligible because of the want of capacity to be elected; and there is nothing said in any of them which, by fair construction and interpretation in the light of the facts of the case, shows that the mind of the court was directed to and intended to decide, where unlimited and unexplained by other language, that eligibility to office did not mean the qualification to hold as well as to be elected to an office.

So that upon the first ground contended for by the appellant for the reversal of the judgment it is apparent he is without legal support.

Neither can we concur with appellant's second proposition, which is, that because the annual salary of his office of supervisor was less than five hundred dollars, therefore section 20, article 4, of the constitution does not apply. The words " lucrative office," as used in that section, refer solely to the office " under the United States," — the federal office. If the salary of the office " under the United States " exceeds five hundred dollars, — which is admitted to be the case here, — then its incumbent cannot hold " any civil office of profit under this state," whether the profit of the latter exceeds five hundred dollars per annum or not. The words " local office," immediately preceding " postmasters," refer evidently to local federal officers. The words " officers of the militia " probably mean such officers when called into the federal service. At all events, it is clear that " lucrative office " applies only to offices under the United States, and " civil office of profit " only to offices under the state.

Therefore the judgment should be affirmed.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.