THE STATE, EX REL. DE FORREST RICHARDS, V. HIRAM G. McMILLEN, RESPONDENT.

**Elections:** RESIDENCE AS A QUALIFICATION FOR OFFICE. The relator was elected to the office of county treasurer at the annual election held November 3, 1885. At that date he had been a resident of the state for five months only, but was otherwise eligible. At the commencement of the term his residence in the state had been continuous for seven months. *Held*, That being ineligible to such election at the date thereof, under a fair construction of Sec. 1, Art. VII. of the constitution, and Sec. 64, Chap. 26, Comp. Stats., such ineligibility was not removed, for the purposes of that election, by reason of six months' continuous residence previous to the commencement of the term.

ORIGINAL action in nature of *quo warranto.*

*Thurston & Hall,* for relator, cited: *State v. Murray,* 28 Wis., 96. *State v. Trumpf,* 50 Id., 111. *Privett v. Bickford,* 26 Kan., 52.

*A. Bartow (O. P. Mason* and *Charles E. Magoon* with him), for respondent, cited: *State v. Smith,* 14 Wis., 539. ·

COBB, J.

This is an information in the nature of a *quo warranto* by De Forrest Richards, who claims to be the county treasurer of Dawes county, by an election held November 3, 1885, against Hiram G. McMillen, incumbent, by virtue of an election first held on the organization of said county, June 27, 1885.

There is no question made in the pleadings or papers, and it may be stated as admitted by the parties, that the relator was a candidate for county treasurer at the annual election of 1885; that he received the highest number of votes cast for that office; that a certificate of election was duly delivered to him; that he gave a sufficient bond as county treasurer, which was approved by the county commissioners; and that he took the necessary oath of office and demanded the records, papers, and other property of the office, of incumbent, which were refused. It is also admitted that the respondent was lawfully elected to the office at the first election, held on the organization of the county, June 27, 1885; that he was regularly qualified, and entitled to hold the office until the next general election for the same office to be held in other counties, as provided by law then in force, and until his successor should be duly elected and qualified. His tenure was fixed by authority of the provisions of Sec. 14 of Art. II., Chap. 17, Compiled Statutes, that: "All county and precinct

·officers elected at the first election as herein provided shall continue to hold their respective offices until the next gen- ·eral election held for the same offices in other counties, as provided by the election law in force at that time, and until their successors are elected and qualified."

The salient question presented is, that of the legal quali- ·fication of the relator as a citizen and·elector at the date of his said election. Was he competent to be elected to the ·office, having six months' consecutive residence in this ·state, within the meaning of the election laws?

Sec. 64, Chap. 26, of the election law, provides: "The ·election of any person to any public office, the location or relocation of a county seat, or any proposition submitted ·to a vote of the people, may be contested. *First.* For malconduct, fraud, or corruption on the part of the judges ·of election in any precinct, township, or ward, or of any board of canvassers, or any member of either board, suffi- cient to change the result. *Second.* When the incumbent ·was not eligible to the office at the time of the election," etc.

Sec. 1 of Art. VII. of the constitution of this state, pro- vides that: "Every male person of the age of twenty-one ·years, or upwards, belonging to either of the following classes, who shall have resided in this state six months, and in the county, precinct, or ward for the term provided by law, shall be an elector. *First.* Citizens of the United .States," etc.

The relator in this proceeding now becomes the *incum- bent,* under the *second* provision of Sec. 64, above quoted, .and it is assumed, from the words of the statute, ·that the .grounds of contest there provided were intended to be suf- ficient grounds of removal, if apparent on evidence, and that the relator therefore must have resided in this state six months consecutively at the time of the election, to have .been eligible to the office.

It is established from evidence that the relator was for-

merly a resident of the state of Alabama; that in the last week of May, 1885, he left that state with his family, with the intention of making a permanent residence elsewhere, if he formed a partnership in business with certain parties in Wyoming territory, which was then contemplated. This intention he made known to others prior, and subsequent, to leaving Alabama. Upon his arrival at or near Cheyenne, in Wyoming territory, and meeting the parties mentioned, he formed the contemplated partnership with them and settled in the county of Dawes, Nebraska, as a business residence. In pursuance of this intention he came into Dawes county June 2, 1885, and going thence to Spearfish, in the territory of Dakota, on a temporary visit to his mother, left his family there, and returned to Dawes county for the purpose of completing his business arrangements, where, with the exception of a trip of two weeks to Chicago for supplies for his business, he remained till August 1st, following, on which day he had erected a house in the new town of Chadron, and on August 2d opened and entered on his present business of banking, under the firm of Richards Brothers & Brown, in which, it is believed, he has continued hitherto. His family, consisting of his wife and two children, remained in Dakota at his mother's until September following, when they joined him at Chadron, remaining there one or two months, when they went thence back to her mother's, in Alabama, to spend the winter.

It cannot, therefore, be maintained that the relator was an elector, a qualified voter, or a citizen, within the meaning of the laws of this state, at the date of his election. His residence was continuous for five months only, at that date, and the place where his family then sojourned was at their former residence in Alabama. And granting that his domicile, for legal purposes, was continuous in Dawes county from June 2, 1885, and that his family's absence was temporary and for transient purposes, he had then

gained the legal residence of an elector on December 2, 1885, and not before. The inquiry is now narrowed, and the question recurs, is the relator then entitled to the office at the subsequent date of his legal qualification, at the commencement of the official term, on Thursday, January 7, 1886, and for which he was disqualified for want of a sufficient continuous residence in the state, at the date of the election?

It is assumed to be the law—the construction to be given to the constitution and statutes—though not expressed literally, that a necessary qualification of an incumbent of an elective office is that of an·elector; that as the highest authority rests wholly with the electors, the delegated authority was intended to be conferred only on electors; that if it was intended to impart political rights and official privileges to aliens, strangers, and non-residents, this intention would have been expressed clearly and not left to be gathered from general words, or from incidents which do not imply it. The clear and manifest authority of law alone could empower and sanction it.

But the question has had its complications. It has been considered in other courts, under partial premises, where a different conclusion was reached.

In the quo warranto of Schuest, relator, v. Murray (28 Wis., 96), at the January term, 1871, of the supreme court of Wisconsin, it was held that the relator, who was an alien November 8, 1870, and on that day elected clerk of the board of supervisors of Waukesha county, and subsequently naturalized, was legally qualified to hold the office at the commencement of the term on January 2, 1871, and being denied the office recovered it by the judgment of the court.

And at the August term, 1880, of the same court, in the quo warranto of one Geilfuss, who was an alien, and was elected treasurer of the city of Milwaukee on the first Tuesday of April, 1880, for the term commencing April

22d, was duly naturalized and qualified on the 21st day of April, and being denied possession, the court rendered judgment that he was entitled to enter upon and hold the office.   *State v. Trumpf*, 50 Wis., 103.

The question was also brought to like conclusion at the July term, 1881, of the supreme court of Kansas, on the *quo warranto* of one *Privett*, who had volunteered in arms against the United States in the war of 1861, and was elected sheriff of Harper county, November 2, 1880, for which he was ineligible under the constitution of the state. Subsequently, before he received his certificate, and before he demanded the office, his disability was removed by act of the legislature of Kansas during its session of 1881, and therefore the court rendered judgment in his favor for the possession of the office.   *Privett v. Bickford*, 26 Kan., 52.

Without the controlling provisions of the constitution and statute of this state, I would be inclined to follow these precedents, and give authority, if possible, to that public expression in favor of the relator.   But, however considerable the artificial merits of his claim to the office may seem to be, and however weighty the authority quoted, yet it is confidently believed that the law of the case is in the other scale.

The writ of *quo warranto* is therefore denied.

WRIT DENIED.

THE other judges concur.