[No. 10755. *En Banc.* October 10, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Charles A. Reynolds, Plaintiff,* v. I. M. HOWELL, *as Secretary of State et al.,* and W. W. BLACK, *Defendants.*[1]

ELECTIONS—ELIGIBILITY OF CANDIDATES—WHO MAY QUESTION. A citizen and elector has the inherent right to maintain an action questioning the eligibility of a candidate for election to a public office.

JUDGES — ELIGIBILITY TO OTHER OFFICE — CONSTITUTIONAL PROVISIONS. Under Const., art. 4, § 5, providing that the judges of the supreme and superior courts shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall be elected, a judge elected for the term of four years is ineligible as a candidate for governor during such period, although his term as judge would expire before the term of governor commences; "eligible" meaning competent to be chosen, and having reference to the time the choice is made, without reference to the time when the term begins (CROW and FULLERTON, JJ., dissenting).

Application for a writ of prohibition, filed in the supreme court September 30, 1912, to prohibit the state canvassing board from certifying defendant's nomination as governor. Granted.

*Reynolds, Ballinger & Hutson,* for relator.

*Robert McMurchie, J. E. Horan,* and *J. A. Coleman,* for defendant Black.

GOSE, J.—This is an application for a permanent writ of prohibition prohibiting the state canvassing board from

[1]Reported in 126 Pac. 954.

certifying to the secretary of state the nomination of the defendant Black as governor of the state, and prohibiting the latter from certifying his nomination.

The relator alleges in his affidavit that he is an adherent of the democratic party, a citizen of the United States, a citizen, resident, taxpayer and elector of the state; that the defendants Howell, Clausen and Lewis constitute the state canvassing board; that the defendant Howell is the secretary of state; that at the primary election held on the 10th day of September, 1912, more than four persons appeared as candidates for the democratic nomination for governor; that no candidate received forty per cent of all first choice votes cast for candidates for that office on the democratic ticket, and that the defendant Black, who was one of the candidates, received a larger number in the aggregate of first and second choice votes for the nomination than any other candidate and that he was nominated, if he was eligible to the nomination.

It is further alleged that on November 2d, 1908, the defendant Black was duly elected to the office of judge of the superior court of the state for Snohomish county, for the term of four years commencing on the second Monday in January, 1909, and until his successor should be elected and qualified; that he duly qualified for the office, entered upon the discharge of his duties, and still is such judge, and that by reason of his election and qualification as such judge, he is ineligible to be elected or to hold the office of governor of the state for the term commencing on the Wednesday following the second Monday of January, 1913. It is further alleged that the state canvassing board and the secretary of state have declared their intention to, and will, certify his name as the candidate on the democratic ticket for governor, unless prohibited by this court. The defendants have demurred to the affidavit upon the ground that it does not state facts sufficient to entitle the relator to relief.

The parties to the proceeding unite in asking the court

to take jurisdiction and dispose of the case upon the merits. We think the right to maintain an action questioning the eligibility of a candidate for election to a public office is inherent in a citizen and an elector. *State ex rel. Harvey v. Mason*, 45 Wash. 234, 88 Pac. 126, 9 L. R. A. (N. S.) 1221. Moreover, the proceeding seems to have the sanction of the statute, Laws 1907, p. 471, § 25; Rem. & Bal. Code, § 4829.

The provisions of the constitution relied upon by the relator as establishing the ineligibility of the defendant Black are as follows: "The term of office of all superior judges in this state shall be for four years from the second Monday in January next succeeding their election, and until their successors are elected and qualified." Constitution, art. 4, § 5.

"The judges of the supreme court and the judges of the superior court shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected." Constitution, art. 4, § 15.

The relator contends that the provision last quoted means that Judge Black is not eligible to be elected to any office other than a judicial one during his term. On the other hand, counsel for Judge Black asserts that the ineligibility extends only to holding another office during his term, and that inasmuch as his term will expire a day or more before the governor's term will begin, if his successor has then been elected and has qualified, it will be presumed at this time that this contingency will happen, or at most that it will not be presumed that it will not happen, and hence that Judge Black is eligible.

We think the relator has correctly interpreted the constitution. It will be observed that the inhibition is not limited to the incumbency of the judge, but that it is extended to the term for which he shall have been elected. It was conceded at the bar, and it cannot be doubted, that a judge cannot qualify himself to hold an office other than a judicial

one during his elective term, by resignation or by any other act on his part. The framers of the constitution knew that judges would be called upon to sit in judgment upon cases of large public and private moment, and they also knew that the righteous cause is not always the popular one, and it was their purpose, in so far as it could be accomplished by the paramount law, to keep the judges out of politics. Both the letter and the spirit of the constitution are in harmony with this view. Its soundness is illustrated by the fact that a judge cannot qualify for an office, other than a judicial one, during his term by resignation or otherwise, and by the further fact that his term continues until his successor has been elected and has qualified.

If the legislature had enacted that the term of governor should commence on the second Monday in January next succeeding his election, Judge Black would not then be qualified either to be chosen or to hold the office. We cannot think that the framers of the constitution intended that the qualification of a judge for election to another office when that officer was elected during his term, should depend upon the contingency of that office beginning a day before or a day after the expiration of his term, nor was it their purpose to require the elector to speculate as to whether a candidate, ineligible to hold an office when voted for, might or might not be eligible to hold the office when the time to qualify arrived. There were lawyers of great learning, experience and ability in the convention that framed our constitution, and they knew the importance of confining judges to the performance of their judicial duties, and the evils that would attend if judges were permitted during their term to take part in the activities of a political campaign for the furtherance of their own political ambitions. If it had been intended to limit a judge to hold an office other than a judicial one during his term, we have no doubt that clear and express words indicating that intention would have been used. Our conclusion is that Judge Black is ineligible to

election as governor.   This view is in accord with the defini-
tion given to the word "Eligible" by the majority of the
lexicographers and text writers, and with what impresses us
as being the best considered cases.   Black defines the word
eligible as "capable of being chosen," "competent to hold
office"; Bouvier & Anderson, "this term relates to the ca-
pacity of holding as well as that of being elected to an office";
Abbott, "the term eligible to office relates to the capacity of
holding as well as the capacity of being elected;" 19 Am.
& Eng. Ency. Law, 397, "Capable of being chosen," "imply-
ing competency to hold the office if chosen;" Worcester,
"legally qualified," "capable of being chosen;" Webster,
"that may be elected," "legally qualified to be elected and
to hold office," "fitted or qualified to be chosen or elected,"
"subject to election," "forming a matter of choice," "requir-
ing selection."   The following cases also support this con-
struction: *Searcy v. Grow*, 15 Cal. 118; *People ex rel. Sim-
mons v. Sanderson*, 30 Cal. 160; *Taylor v. Sullivan*, 45 Minn.
309, 47 N. W. 802, 22 Am. St. 729, 11 L. R. A. 272; *Terri-
tory ex rel. Parker v. Smith*, 3 Minn. 240, 74 Am. Dec. 749;
*People v. Leonard*, 73 Cal. 230, 14 Pac. 853; *State v.
McMillen*, 23 Neb. 385, 36 N. W. 587; *In re Corliss*, 11
R. I. 638, 23 Am. Rep. 538; *State ex rel. Thayer v. Boyd*,
31 Neb. 682, 48 N. W. 739, 51 N. W. 602; *State ex rel.
Nourse v. Clarke*, 3 Nev. 566.

In *Searcy v. Grow* in construing the following language
in the California constitution, "no person holding any lucra-
tive office under the United States or any other power shall
be eligible to any civil office of profit under this state," etc.,
the court said:

"The counsel for the appellant contends that the true
meaning of the constitution is, that the person holding the
Federal office described in the twenty-first section is forbidden
to take a civil state office while so holding the other; but that
he is capable of receiving votes cast for him, so as to give
him a right to take the state office upon or after resigning
the Federal office.   But we think the plain meaning of the

words quoted is the opposite of this construction. The language is not that the Federal officer shall not *hold* a state office while he is such Federal officer, but that he shall not, while in such Federal office, be *eligible* to the state office. We understand the word eligible to mean capable of being chosen—the subject of selection of choice. The people in this case were clothed with this power of choice; their selection of the candidate gave him all the claim to the office which he has; his title to the office comes from *their* designation of him as sheriff. But they could not designate or choose a man not eligible, *i. e.*, not capable of being selected. They might select any man they chose, subject only to this exception, that the man they selected was capable of taking what they had the power to give.

"We do not see how the fact that he became capable of taking the office, after they had exhausted their power, can avail the appellant. If he was not eligible at the time the votes were cast for him, the election failed. We do not see how it can be argued that, by the act of the candidate, the votes which, when cast, were ineffectual because not given for a qualified candidate, became effectual to elect him to office."

In *People ex rel. Simmons v. Sanderson* the court said that the constitutional provision dividing the powers of government into three separate departments, the legislative, executive and judicial, and providing further that no person charged with the exercise of powers belonging to one of these departments should exercise any function appertaining to either of the others, was conceived in the same spirit as the provision we have quoted and that:

"One of its objects seems to have been to confine judges to the performance of judicial duties; and another to secure them from entangling alliances with matters concerning which they may be called upon to sit in judgment; and another still to save them from the temptation to use their vantage ground of position and influence to gain for themselves positions and places from which judicial propriety should of itself induce them to refrain."

In the *Taylor* case, the words "eligible to any office" were held to mean "electable, proper to be chosen, qualified to be

elected." *Parker v. Smith* announces the same view. In the *Leonard* case, it was held that the word "eligible" in the constitution refers to the capacity to hold as well as to be elected to office. In the *McMillen* case, it was held that one not an elector at the date of his election was not eligible to an office, the term of which commenced after he had become an elector. In the *Corliss* case, it was held that a person cannot be elected who is ineligible or, in other words, "incapable of being elected." In the *Boyd* case, the word "eligible," found in the Nebraska constitution, was held to mean "qualified to be chosen." In *State ex rel. Nourse v. Clarke*, the court in construing a provision of the Nevada constitution to the effect that: "No person holding any lucrative office under the government of the United States, or any other power, shall be eligible to any civil office of profit under this state," said:

"But instead of restricting the meaning of the word 'eligible,' as defendant contends, we think, to carry out the intention of the constitutional convention, we ought rather to give it a more extended signification than is generally given, and hold that it means both "incapable of being legally chosen" and "incapable of legally holding."

Counsel for Judge Black rely upon the following cases: *Smith v. Moore*, 90 Ind. 294; *State v. Trumpf*, 50 Wis. 103, 5 N. W. 876, 6 N. W. 512; *Hoy v. State ex rel. Buchanan*, 168 Ind. 506, 81 N. E. 509; *Brown v. Goben*, 122 Ind. 113, 23 N. E. 519; *Shuck v. State ex rel. Cope*, 136 Ind. 63, 35 N. E. 993; *Bradfield v. Avery*, 16 Idaho 769, 102 Pac. 687, 23 L. R. A. (N. S.) 1228; *Demaree v. Scates*, 50 Kan. 275, 32 Pac. 1123, 34 Am. St. 113, 20 L. R. A. 97; *Kirkpatrick v. Brownfield*, 97 Ky. 558, 31 S. W. 137, 53 Am. St. 422, 29 L. R. A. 703; *State ex rel. Perine v. Van Beek*, 87 Iowa 569, 54 N. W. 525, 43 Am. St. 397, 19 L. R. A. 622.

Whilst these cases support their view, the rule of construction which they announce was ably challenged by a minority of the court in the Indiana, Wisconsin, Kansas and Iowa cases. In *Smith v. Moore* the majority of the court held that

the words "eligible to an office" mean "legally qualified as an officer to perform the duties of a public office." Judge Elliott in dissenting approves the rule of construction announced in *Searcy v. Grow, State v. Clarke,* and *People v. Sanderson,* and says that the word "eligible" refers to the time of election, and quotes with approval the language we have excerpted from *People v. Sanderson.* In *State v. Trumpf* it was held that one who was an alien when elected to office, became eligible to hold the office by admission to citizenship before the commencement of his term of office. On a motion for a rehearing, Ryan, Chief Justice, said that he adhered to the rule of interpretation announced in the earlier cases on the ground of judicial expediency, but expressed the opinion that the better view was that one receiving votes for office should then be eligible to hold the office. In *Hoy v. State* it was held that one who is ineligible to hold office at the time of his election, but who can remove the disqualification by some act of his own before the commencement of his term of office is not ineligible within the meaning of the law. The opinion in *Brown v. Goben* was written by Judge Elliott, who took occasion to say that while the court adhered to the rule announced in *Smith v. Moore* and later cases, that the cause which disqualifies must exist at the time the claimant's term begins, and that his right is not affected by the fact that at the time of his election he was ineligible, that further investigation had strengthened his conviction that these cases were erroneous.

In *Shuck v. State* the rule announced in *Smith v. Moore* was reaffirmed. In *Bradfield v. Avery* it was held that when the word "eligibility" is used in connection with an office and there are no explanatory words indicating that the word is used with reference to the time of election it has reference to the qualification to hold the office, rather than the qualification to be elected to the office. In that case the real question was whether one who had held a first grade certificate for the required statutory time at the beginning of the term of

county superintendent, but who had not had the certificate for the required time when elected, was eligible to the office. In *Demaree v. Scates* it was held by a divided court that the word "eligible" used in the statute had reference only to the capacity to hold office. Allen, judge, in dissenting said that in his opinion not only the weight of reason, but of authority as well, is to the effect that the word "eligible" has reference to the status of the candidate at the date of his election, when the electors make their choice; that such choice should be made from those persons then eligible, and that the electors should not be required to speculate as to whether subsequent conditions which may or may not arise would qualify the candidate to hold the office.

In *Kirkpatrick v. Brownfield* it was ruled that the word "eligible," as used in the constitution, signifies eligible to hold office. The court was, however, influenced by the fact that the constitution used the words "eligible to election" and "eligible to office," and concluded that the change in phraseology was not the result of mere chance. In *State v. Van Beek*, it was held by a divided court that one who was an alien at the time of his election and consequently ineligible to hold office, could remove the disability by being naturalized before his induction into office. The chief justice in dissenting construed the word eligible to mean eligible to hold office at the time of the election.

It is a cardinal rule of construction that the words of a statute or of a constitution should be so construed as to effectuate the purpose and intent of the lawmakers, hence that construction should be adopted which will best subserve the general purpose for which the law was written. The view we have taken, we think, not only catches the intent and spirit of the constitution, but is withal a wholesome view, for as Judge Elliott said in dissenting in *Smith v. Moore*, "judges ought not to be allowed to be scramblers for political places." The writ is granted.

MOUNT, C. J., PARKER, ELLIS, and MAIN, JJ., concur.

CHADWICK, J. (concurring)—I would have some hesitation in speaking to the question before the court, for my views have been to some extent made public in the conduct of my personal affairs, but the main opinion having been signed by a majority of the court, I see no impropriety in adding a few words.

. Judge Gose says:

"It was conceded at the bar, and it cannot be doubted, that a judge cannot qualify himself to hold an office other than a judicial one during his elective term by resignation or by any other act on his part."

If the law is not so, if the spirit of the constitution is to be overcome by its alleged letter, if there is no question of public policy which controls the judicial officer for his full term, the right of resignation as well as the right to qualify after the term could not be denied; and for this reason: The only interest the public has in the office is to see that it is filled. The constitution and the statutes provide for filling vacancies. After the resignation of a judge and the vacancy is filled, no public interest remains in the individual. The public cares not whether an office is filled by A or B so long as it is duly administered. Then why can a judicial officer not run for a political office? The answer is to be found in the constitution. Its spirit, and I think its letter, is that a judicial officer assents when he comes to the office that, for the term prescribed in his certificate of election, he will divorce himself from political activities.

To give the constitution any other meaning would defeat its purpose entirely. For instance: A is elected to a judicial position for a four-year term. During the first two years of his incumbency he could not run for a political office, but immediately upon the passing of a biennial election he might become an active agent in the general politics of the state for the reason that his term would expire before he assumed the office to which he aspired. The construction of the minority would keep a judge inactive for the half or two-

thirds of his term and leave him free to promote his ambitions for the last two years of his term. Such was not the purpose of the constitution. To state any one of many possible cases meets the whole argument, and leaves the spirit of the fundamental law unimpaired and undimmed. A judge is not elected for four years, but for a term of four years and until his successor is elected and qualified. Suppose no successor is elected to succeed Judge Black, or, being elected, does not qualify until after the term of governor commences. The judge could not qualify, for the reason that his term would be continuing. Nor could he, under the very letter of the law, resign to take a political office. This is admitted by all. Hence, although elected he would not be free to assume the duties of his office; nor could he qualify himself by resignation, for the reason that he was disqualified at the time the term of the other office began. In many of the cases relied on by respondent, and others that might be mentioned, it has been held that statutes providing that a person shall not be eligible unless over the age of twenty-one, or unless he have a certificate of proficiency in his profession, will not disqualify the person if the disability be removed before the term begins. These decisions are sound; the spirit of the law is not broken but enforced. But here the question of eligibility goes not to personal qualifications, but the officer is barred by his present office or environment. The spirit of the law is enforced in both cases.

Office holding is a privilege and not a right, and it is well within the power of the people to insist that one who accepts a commission for a definite term shall forfeit the right to publicly aspire to any other office, or an office of a different character, not while he remains an incumbent, but for a definite time. The constitutional provision was written, not to protect the office for it needs no protection, but to restrain the man. If it is not so accepted, it serves no purpose and had better have been omitted entirely.

MORRIS, J., concurs with CHADWICK. J.

CROW, J. (dissenting)—I am unable to concur in the conclusion reached by the majority. The words of art. 4, § 15, of the state constitution are so plain and simple that no necessity exists for the elaborate argument to which resort is made in support of the construction announced in the majority opinion. It is conceded that Judge Black's present term will expire on January 13, 1913, and that the next gubernatorial term will not commence until January 15, 1913. The constitution reads:

"The judges of the supreme court and the judges of the superior court shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected."

These words clearly and concisely say "ineligible *to any other office;*" not ineligible to be a candidate or to be elected. As suggested in the majority opinion, "there were lawyers of great learning, experience and ability in the convention that framed our constitution," and it would seem that an intention to prohibit judges from being candidates for nonjudicial offices during their judicial terms could have been easily stated at the instance of the eminent lawyers, by the use of such words as "ineligible to be elected" or "ineligible to be a candidate." But no such words were used. As a matter of ethics, I heartily concur in the wholesome idea expressed in the majority opinion, that no judge should under any circumstances become a candidate for, or campaign for, any nonjudicial office while serving as a judge or during his term as judge. But I am unable to conclude that such views should lead me into the position of placing the construction on the constitution which the majority have adopted.

In *Bradfield v. Avery,* 16 Idaho 769, 102 Pac. 687, 23 L. R. A. (N. S.) 1228, the court announces a view contrary to that announced in the majority and the concurring opinion. While it is true that Judge Gose seeks to distinguish this case and others cited by counsel for defendants, it seems to me that the reasoning of the Idaho court is convincing. In

a notation to this case as reported in 23 L. R. A. (N. S.) 1228, the annotator says:

"The cases discussing this question are quite evenly divided, and while perhaps the majority are in accord with *Bradfield v. Avery*, there is considerable authority to the contrary. The question has arisen most frequently under statutory or constitutional provisions using the word 'eligible' in connection with certain qualifications or disqualifications for public office. That such a provision relates to the time of taking office, instead of the election or appointment, was held in the following cases: *State ex rel. Thornburg v. Huegle*, 135 Iowa 100, 112 N. W. 234; *People v. Hamilton*, 24 Ill. App. 609; *Hoy v. State*, 168 Ind. 506, 81 N. E. 509, 11 A. & E. Ann. Cas. 944; *Brown v. Goben*, 122 Ind. 113, 23 N. E. 519; *Shuck v. State*, 136 Ind. 63, 35 N. E. 993; *Demaree v. Scates*, 50 Kan. 275, 20 L. R. A. 97, 34 Am. St. Rep. 113, 32 Pac. 1123; *Kirkpatrick v. Brownfield*, 97 Ky. 558, 29 L. R. A. 703, 53 Am. St. Rep. 422, 31 S. W. 137; *State ex rel. Broatch v. Moores*, 52 Neb. 770, 73 N. W. 299."

I think the doctrine announced in the cases cited by the annotator should be controlling here.

The writ should be denied. I therefore dissent.

FULLERTON, J., concurs with CROW, J.