JOHNSON *v.* HUDSON.

(*Jackson.* May 21, 1896.)

1. CONSTITUTIONAL LAW. *Statutes providing for payment of unclaimed costs into county treasury, valid.*

Doctrine reaffirmed that statutes are constitutional and valid, which provide that Clerks or other officers shall pay unclaimed costs and funds into the county treasury, there to remain until demanded by the parties to whom same are due. (*Post, pp. 631–637.*)

Code construed: §§ 577–581 (M. & V.); §§ 520–524 (T. & S.).

Cases cited and approved: Deadrick *v.* Washington County, 1 Cold., 202; Head *v.* Barry, 1 Lea, 753; Massey *v.* Gleaves, 1 Tenn. Chy., 150–153.

2. SAME. *Acts 1895, Ch. 137, §§ 2, 3, invalid.*

But Acts 1895, Ch. 137, §§ 2, 3, empowering and requiring the attorneys appointed by the State Comptroller to investigate the books of Clerks and other officers, and collect from them unclaimed costs and other funds and pay over same, less fifteen per cent. commissions, to the parties entitled thereto, is an unlawful invasion of the rights of the citizen, and violates § 8 of the bill of rights. The State Comptroller cannot be authorized to employ attorneys for the citizen without his request or consent, and to be paid out of his funds. (*Post, pp. 637–640.*)

Constitution construed: Art. I., § 8.

Act construed: Acts 1895, Ch. 137.

Cases cited: Reynolds *v.* Baker, 6 Cold., 228; Knox *v.* State, 9 Bax., 207.

FROM BENTON.

Appeal from Chancery Court of Benton County. A. G. HAWKINS, Ch.

Johnson *v.* Hudson.

JOHNSON & VERTREES and ELI P. MORRIS for Johnson.

SIDNEY L. PEELER for Hudson.

JOHN T. ALLEN, Sp. J. This is an agreed case, by which the parties, in accordance with §§ 4187, 4188 of M. & V. Code, submitted the facts upon which the controversy depends, to the Chancery Court of Benton County, in which county the defendant resides. The defendant is Clerk and Master of the Chancery Court of said county, and has been such for three years. The complainant is the attorney appointed by James A. Harris, Comptroller of the State, under Ch. 137 of the Acts of 1895, the object being to clothe said attorney with the powers heretofore vested in the Judge or Chairman of the County Courts of the State, under §§ 578–581, inclusive, of M. & V. Code.

It is agreed that the defendant, as such Clerk and Master, had received and collected, and now has in his hands, certain sums of money, due and going to certain parties, known and unknown, as follows:

1. Fees due certain parties as witnesses in the Chancery Court, amounting to twenty dollars.

2. Fees due certain parties, and officers for services rendered, amounting to twelve dollars.

3. Amounts due certain parties for legacies, unknown.

4. Amounts due persons as creditors in insolvent estates, and where land has been sold for the payment of debts, amounting to twenty-six dollars.

5. Amounts due certain parties from the sale of real estate for partition, amounting to nine dollars.

6. And perhaps other sums from other sources, and for other causes not known or remembered, such as printer's fees, surveyor's fees, and such fees as arise from the due course of litigation in the Chancery Court.

That said sums have been in the hands of defendant, as such Clerk and Master, for more than two years; that said Johnson, as such attorney aforesaid, has called upon defendant, at his office, to turn over all these sums of money to him, as provided for in Ch. 137 of the Acts of 1895, which defendant declined to do. And defendant assigned fifteen reasons for declining to pay said funds over to said Johnson, as such attorney, all of which are stated in the record; but it is not deemed important or material to mention but one of the reasons assigned by defendant, which is as follows: "The said Act of 1895, Ch. 137, directs the Comptroller to appoint an attorney to collect the money of the citizen, when he has not requested it, and to take fifteen per cent. of his money as pay for the services of the attorney, when the citizen has neither asked, requested, or desired the same. This Act takes from the citizen fifteen per cent. of his property without his consent or his day in Court." And it is insisted, for this reason, said Act violates § 8 of the Bill of Rights, and is therefore void.

On the other hand, it is insisted by · complainant

that the statute means that the attorney collecting said funds shall pay them over to the county, and that the county is the party entitled to said funds, on the ground that said funds go to the county in the nature of escheat, and that the citizen is not deprived of any part of his property by virtue of this Act.

Section 577, M. & V. Code (being § 520 of Code of 1858) empowers the Judge or Chairman of the County Court to act as the financial agent of the county, and says what his duties are as such financial agent in subsections 1 to 10, inclusive.

Section 578 of M. & V. Code (being § 521 of Code of 1858) requires the Judge or Chairman of the County Court, in making settlements with the Clerks, to ascertain what amounts of money in their hands due to witnesses, officers, and others, which may have been collected by them from suitors, or from the State and county treasury, and which have been in the hands of the Clerks for more than two years, and provides that such sums of money shall be paid into the county treasury as other county revenue.

Section 579 of M. & V. Code (being § 522 of Code of 1858) requires the Clerks, upon oath, to report to the Judge or Chairman the items so collected by them and remaining in their hands, as mentioned in the last section, and the Judge or Chairman is required to examine the books minutely and interrogate the Clerks with reference to the facts, and to report thereon to the County Court.

Section 580 of M. & V. Code (being § 523 of Code of 1858) requires the Judge or Chairman to accompany his report with a list of the persons to whom money remaining in the hands of the Clerk is due, and the County Court shall spread the same in full in a record book kept for that purpose.

Section 581 of M. & V. Code (being § 524 of Code of 1858) says: "The person to whom any money paid into the county treasury is due, may apply to the Judge or Chairman of the County Court for a warrant for the amount due him, and on presenting this warrant to the County Trustee he shall pay the amount, as in other cases, out of any money in the treasury."

In the case of *Deadrick* v. *County Court of Washington County*, 1 Cold., 202, that being a motion against Deadrick, as Clerk and Master, to compel him to pay over moneys to the county treasury which had lain in his office unclaimed for more than two years, Judge McKinney, delivering the opinion of the Court, said:

"We are of opinion that the Act of 1845, the substance of which has been incorporated into the Code, §§ 521–524, is free from any constitutional objection. Moneys, in greater or less amounts, are constantly paid into the Clerks' offices, which are never called for by the persons to whom they belong, and consequently fall to the Clerk. The law in questions transfers these moneys to the several county treasuries. This law is based upon the familiar prin-

Johnson *v.* Hudson.

ciple of the doctrine of escheat, by which the lands of persons dying without heirs, or for which no owner can be found, go to the State, or, with us, to the common school fund. The same principle, we suppose, may be applied to personalty.

"What objection can there be to such a provision? The rights of the persons to whom the moneys were due, should they ever appear to demand them, are carefully protected by the statute. No injury is done to them by the transfer of the fund from the Clerk's office to the county treasury. The payment of the money, if ever called for, is, at least, as amply secured to them. Nor is any injury done to the Clerk of which he can be heard to complain. He has no right or claim to the money, and the authority of the statute is full indemnity to him against all future liabilities as regards the persons to whom the moneys may belong, in event they should ever appear or demand payment."

In cases of escheats, as regulated by our statute, §§ 2961–2968 of M. & V. Code, the title of escheated property vests absolutely in the State, for the use of the common school fund, and there is no provision for the payment of any escheated property to any claimant after it has been paid into the State treasury. But by the law in question, §§ 578–581 of M. & V. Code, the rights of the persons to whom the funds in the Clerk's hands are due are carefully preserved. A list of the names of such persons, and the amount due each, is placed on record in

the County Court, and upon demand of such person the Judge or Chairman of that Court issues his warrant upon the county treasury for the amount.

In no sense can it be said that funds thus paid into the county treasury become the property, absolutely, of the county. The county is simply the custodian of the fund, to preserve it until called for by the rightful owner.

This was a very wise provision of the law, in view of the fact that the terms of office of the Clerks expire, and the funds due to such claimants, if allowed to remain in the hands of the Clerks, are liable to be lost to the owners, after the lapse of time, either by the Clerk and his bondsmen becoming insolvent, or by the bar of the statute of limitations. But after the funds are transferred to the county treasury they become trust funds in the county treasury, and without reference to the length of time said funds remain in the county treasury, the rightful owner or owners are amply protected, if they should ever demand the same.

In the case of *Massey* v. *Gleaves*, 1 Tenn. Chy. Rep., 150–153, a petition was filed for instruction from the Court as to what disposition should be made of funds that had remained in the hands of the Clerk and Master several years, due witnesses, officers, litigants, etc., and Judge Cooper ordered publication to be made for the claimants entitled to said funds to make application for said funds within six months; and held that §§ 521–524 (of Code of

1858) regulated the disposition of said funds, but until said funds were paid over into the county treasury the Chancery Court had jurisdiction to order said funds paid out to the parties upon their application. And the funds in question in that case were paid to the parties entitled thereto, under the orders of the Court.

These sections of the Code came before this Court again in the case of *Head* v. *Barry*, 1 Lea, 753. That was a suit by the Chairman of the County Court against the Clerk and Master at Gallatin, to collect and transfer to the county treasury funds that had remained in the hands of the Clerk and Master more than two years. And the Court, in that case, quote said sections of the Code, and say: "The language of the Act of 1845 is so comprehensive that we see no way in which to restrict its operation, were we disposed to do so."

It is manifest from the reading of said sections of the Code, and the construction put upon them by the Courts in the cases referred to, that the parties entitled to said funds are the persons to whom said funds are due. Ch. 137 of the Acts of 1895 is as follows:

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee*, That §§ 520–524, inclusive, of the Code of 1858, be, and the same are hereby, amended so as to apply to Clerks of the Supreme Court, and they are hereby required to pay over to the Judge or Chairman of the County

Court of the county in which the suits originated, as other county revenue, on the first day of January, April, July, and October of each year, all moneys in their hands due to witnesses, officers, litigants, and others, which may have been collected by the Clerk from suitors, or from the State and county treasury, and which have been in Court for more than two years.

"SEC. 2. *Be it further enacted;* That the attorneys appointed by the State Comptroller, as now provided, or which may hereafter be provided by law, or such attorneys as the State Comptroller may deem necessary to appoint for the purpose of enforcing the provisions of the above named sections and of this Act (which is hereby authorized), are required and empowered to investigate all of the books, dockets, ledgers, receipts, notes, etc., of the various Clerks and other officers of this State, or of the Clerks and other officers of the various counties of the State, and to collect any and all revenue, money, or funds, of any character whatsoever, found due therefrom, together with interest and penalties, and pay the same over (less the compensation provided for attorneys in Ch. 218, Acts of 1879) as other revenue collected by them to the parties entitled thereto.

"SEC. 3. *Be it further enacted,* That §§ 520 to 524, inclusive, of the Code of 1858, and all other laws relative to the powers and duties of the Judge or Chairman of the County Court in conflict with this Act, be, and the same are hereby, modified so

Johnson *v.* Hudson.

as to conform to same, and all other laws in conflict with this Act are hereby repealed; *Provided,* That nothing in this Act shall be construed so as to prevent the County Judge or Chairman from enforcing the provisions of said sections, and of this Act, if the State Comptroller or his attorneys, upon request of said Judge or Chairman, fail to do so.''

This Act does not make any change in the sections of the Code amended, in respect to giving the counties any better right to said funds than was given under said sections, but the Act leaves the funds to belong to the persons to whom the funds are due. Nor does the Act provide expressly for said fund to be transferred from the Clerks to the county treasuries through the attorneys of the Comptroller of the State, nor can that be inferred from the Act. It empowers the attorney of the Comptroller of the State to collect said funds from the Clerks due such individuals, and to pay the same over (less fifteen per cent. commission to the attorney) to the parties entitled thereto, who are officers, litigants, and others, to whom said funds are due, as shown by the Clerk's books and records in his office. The Judge or Chairman of the County Court has no power to collect and turn these funds into the county treasury until the Comptroller of the State or his attorneys have failed to collect said funds from the Clerks, after having been requested by such Judge or Chairman to do so. The Act provides for transferring said funds from

the hands of Clerks, who are under bond to account for said funds, to said attorneys of the Comptroller of the State, appointed to collect the said funds, who are not required to give any bond, for such attorneys to pay said funds over (less their commission of fifteen per cent.) to the parties entitled thereto, not ''upon the familiar principle of the doctrine of escheat,'' nor for the purpose of better preserving said funds for the persons to whom said funds are due, as against the contingency of the Clerk going out of office, and he and his bondsmen becoming insolvent, or said claims being barred by the lapse of time, which were the objects and intention of the Act of 1845, sought to be amended by said Act of 1895—but, on the contrary, the State Comptroller is empowered by said Act of 1895 to employ attorneys to represent these persons, to whom funds are due which have remained in the hands of the Clerk for more than two years, without the consent of such persons; and the attorneys thus appointed and employed are allowed to deduct out of the funds of these persons, when collected, fifteen per cent. commission for collecting and paying over said funds to the parties entitled thereto, without the consent of the said parties entitled to said funds or due process of law.

We hold, therefore, that Secs. 2 and 3 of said Act of 1895 are obnoxious to Sec. 8 of the Bill of Rights, and that the same are unconstitutional and void.    6 Cold., 228, 229; 9 Bax. 207.

The decree of the Chancellor is reversed.