STATE OF NEBRASKA, EX REL. WILLIAM J. BROATCH, V.
FRANK E. MOORES.

FILED DECEMBER 9, 1897. No. 9249.

1. **Pleading:** DEMURRER. On demurrer judgment should go against the party whose pleading was first defective in substance.

2. **Office of Mayor.** The office of mayor of a city of the metropolitan class is an office of profit and trust under the laws of this state.

3. **Title to Witness Fees in Hands of Clerk.** Unclaimed witness fees and costs remaining in the hands of the clerk of the district court are not public moneys; and the legislation of this state, in so far as it attempts to divest the persons for whose benefit such fees and costs are paid of title thereto, is unconstitutional and void.

4. **Clerk District Court:** FINES AND PENALTIES: CONSTITUTIONAL LAW. A clerk of the district court, as to moneys received by him in payment of fines and penalties imposed in his court, is a collector and custodian of public money within the meaning of section 2, article 14, of the constitution. HARRISON, J., and IRVINE and RAGAN, CC., dissenting.

5. **Constitutional Law:** OFFICERS: DEFAULT. The term "default," as used in said section of the constitution, implies more than a mere civil liability. There must exist a willful omission to account and pay over, with a corrupt intention, or such a flagrant disregard of duty as to fairly justify the inference that his conduct was willful and corrupt. Per NORVAL, J.; POST, C. J., and RYAN, C., concurring; RAGAN, C., dissenting.

6. **Officers:** ELIGIBILITY. The word "eligible" relates to the capacity to be elected or chosen to office, as well as to hold office. Per NORVAL, J., and RAGAN, C.; POST, C. J., and RYAN, C., concurring.

7. **Quo Warranto:** SUFFICIENCY OF INFORMATION. *Held,* That the information states a cause of action. HARRISON, J., IRVINE and RAGAN, CC., dissenting.

8. ———: ANSWER. The answer of the respondent avers sufficient matters, if true, to constitute a defense. Per NORVAL, J.; POST, C. J., and RYAN, C., concurring.

ORIGINAL action in the nature of *quo warranto* to oust respondent from the office of mayor of the city of Omaha. Heard on general demurrer to answer of respondent. *Demurrer overruled.*

The opinion by NORVAL, J., contains a statement of the issues.

*C. C. Wright, J. B. Sheean,* and *Frank T. Ransom,* for relator:

It is the duty of a clerk of the district court to pay within ten days, without demand, to the county treasurer all moneys received as fines. (Constitution, art. 8, sec. 5; Criminal Code, secs. 533, 534; Compiled Statutes, ch. 80, art. 2, sec. 2; *Hazelet v. Holt County,* 51 Neb., 716.)

The word "eligible" as used in the Constitution and in chapter 26, section 64, Compiled Statutes, means "capable of being elected," and refers to the time of election, and not to the time of entering upon the discharge of the duties of the office. (*State v. McMillen,* 23 Neb., 385; *Thayer v. Boyd,* 31 Neb., 682; *Parker v. Smith,* 3 Minn., 164; *Taylor v. Sullivan,* 45 Minn., 309; *Searcy v. Grow,* 15 Cal., 118; *State v. Clarke,* 3 Nev., 566.)

Section 2, article 14, of the constitution, providing that a person who is in default as collector and custodian of public money or property shall not be eligible to any office of trust or profit, applies to the office of mayor of the city of Omaha. (*Douglas County v. Timme,* 32 Neb., 272; *People v. Hurlbut,* 24 Mich., 47; *Attorney General v. Common Council,* 70 N. W. Rep. [Mich.], 450; *Montgomery v. State,* 107 Ala., 380; *Chambers v. State,* 127 Ind., 365; *Burch v. Hardwicke,* 30 Grat. [Va.], 24; *State v. Valle,* 41 Mo., 29; *Shell v. Cousins,* 77 Va., 328.)

Respondent was "in default" within the meaning of the constitution. (*Williams v. Stern,* 5 Q. B. Div. [Eng.], 409.)

Relator may test the title of respondent to the office before the latter has been convicted of an offense. (*Pucket v. Bean,* 58 Tenn., 600; *Brady v. Howe,* 50 Miss., 607; *Hoskins v. Brantley,* 57 Miss., 814; *Taylor v. Governor,* 1 Ark., 21.)

Mistake or ignorance of a clerk in charging and col-

lecting illegal fees, though there is no evil intent, is not a defense to an action for the penalty. (*Cobbey v. Burks,* 11 Neb., 157; *Phœnix Ins. Co. v. Bohman,* 28 Neb., 253.)

*Wharton & Baird* and *J. J. Boucher, contra:*

The words of the constitution, "Any office of trust or profit under the constitution or laws of this state," are not applicable to the office of mayor of the city of Omaha. (*Santo v. State,* 2 Ia., 166; *Waldo v. Wallace,* 12 Ind., 584; *Attorney General v. Connors,* 27 Fla., 337; *State v. Wilmington,* 3 Harr. [Del.], 294; *Britton v. Steber,* 62 Mo., 370; *State v. McKee,* 69 Mo., 507; *State v. Smith,* 35 Neb., 13; *Respublica v. Dallas,* 3 Yeates [Pa.], 300; *People v. Henry,* 62 Cal., 557; *People v. Proomes,* 34 Cal., 520; *State v. Kirk,* 44 Ind., 401; *Mohan v. Jackson,* 52 Ind., 599; *Dorsey v. Vaughan,* 5 La. Ann., 155; *State v. Montgomery,* 25 La. Ann., 138; *State v. Taylor,* 11 So. Rep. [La.], 132; *Carpenter v. People,* 8 Colo., 129.)

The statutory provisions whereunder it is claimed to be the duty of the clerk of the district court to pay over, for the use of the school fund, all witness fees and costs remaining uncalled for, are unconstitutional and void. (*Kuntz v. Sumption,* 117 Ind., 1; *Atchison & N. R. Co. v. Baty,* 6 Neb., 37; *Good v. Zercher,* 12 O., 368; *St. Anthony Co. v. Greely,* 11 Minn., 321; *Baker v. Kelley,* 11 Minn., 480; *Marshall v. McDaniel,* 12 Bush [Ky.], 378; *Gilman v. Tucker,* 128 N. Y., 190; *Colon v. Lisk,* 43 N. Y. Supp., 364; *Cromwell v. MacLean,* 123 N. Y., 474; *Ames v. Port Huron Boom Co.,* 11 Mich., 139; *Rockwell v. Nearing,* 35 N. Y., 307; *Nynehamer v. People,* 13 N. Y., 395; *Campbell v. Evans,* 45 N. Y., 356; *Cook v. Gregg,* 46 N. Y., 439; *Turner v. Althaus,* 6 Neb., 54; *Parsons v. Russell,* 11 Mich., 113; *Varden v. Mount,* 78 Ky., 86; *Chicago, B. & Q. R. Co. v. City of Chicago,* 17 Sup. Ct. Rep., 581; *Peterkin v. Inloes,* 4 Ind., 175; *Scott v. McNeall,* 14 Sup. Ct. Rep., 1108; *Hughes v. State,* 41 Tex., 19; *Groesbeck v. Seeley,* 13 Mich., 329; *McGavock v. City of Omaha,* 40 Neb., 75; *Denny v. Mattoon,* 2 Allen [Mass.], 381; *Johnson v. Hudson,* 96

Tenn., 630; *Bank of Louisville v. Board of Trustees*, 83 Ky., 219.)

References as to question of default: *People v. Hamilton*, 24 Ill. App., 613; *State v. Hastings*, 37 Neb., 97; *State v. Kountz*, 12 Mo. App., 511; *State v. Hunnicut*, 34 Ark., 564.

NORVAL, J.

This was an application by the state, on the relation of William J. Broatch, for a writ of *quo warranto* against Frank E. Moores to test the right of the respondent to hold the office of mayor of the city of Omaha. The averments of the application or information, so far as they are material to an understanding of the questions involved, may be summarized as follows:

1. That at an election duly held in the city of Omaha in November, 1895, relator, being qualified and eligible thereto under the constitution and laws of the state, was elected mayor of said city for the term of two years commencing on the first Tuesday in January, 1896, and until his successor was elected and qualified; that he duly qualified and entered upon the duties of the office, and has since discharged the functions thereof.

2. That under and by virtue of an act of the legislature of 1897, being chapter 12*a*, Compiled Statutes, 1897, at an election held in said city on the 20th day of April last, the respondent received a majority of the votes cast thereat for the said office of mayor, and the canvassing board declared him elected for the term of three years from and after the 10th day of May, 1897; that respondent thereupon qualified by giving the bond, and taking and subscribing the oath of office as required by said law, and claims the right, authority, and power to exercise and discharge the duties of mayor of said city, and is usurping and invading the functions of said office.

3. That for eight years ending in January, 1896, respondent was the duly elected, qualified, and acting clerk of the district court of Douglas county, and as

such clerk, during said period, he collected and received in fines and penalties imposed by said court upon divers persons aggregating the amount of $2,061.20, which, prior to May 9, 1897, he had failed and refused to account for and pay over to his successor in office, or to the county treasurer, but applied the same to his own use and benefit; that on said day respondent paid to the county treasurer of said amount the sum of $1,818.83, but has neglected and refused to pay at any time the remaining sum of $242.37.

4. That respondent as such clerk collected in cases pending or disposed of in said court certain witness fees aggregating $7,283.35, which remained in his hands for six months uncalled for, and likewise collected certain advance fees and lower court costs in the aggregate sum of $2,363.45, which remained in his hands for two years after the payment thereof uncalled for; that he has failed, neglected, and refused to pay the last two amounts, or any part thereof, to his successor in office, to the treasurer of Douglas county, or to any other person, but has converted the same to his own use; that by reason of the facts above set forth respondent was in default as collector and custodian of public money, which rendered him ineligible to the office of mayor, and his election thereto is null and void, and that he is wrongfully usurping and invading said office.

5. That respondent took possession of the office of mayor against the protest of the relator, and that the latter has not abandoned said office or any claim thereto.

The answer filed to the information, after admitting the election and qualification of the relator and respondent, respectively, to the office of mayor as above set forth, and that respondent was clerk of the district court of Douglas county from January, 1888, to January, 1896, denies that respondent is unlawfully usurping the office of mayor, or that as collector and custodian of public funds he was in default or is ineligible to said office; and alleges, substantially, that during his incumbency

of the office of clerk of the district court he collected altogether, in fines and penalties, the sum of $6,027.56, and has paid over to the county treasurer the entire amount thereof; that it was his *bona fide* intention and purpose at all times to pay all the fines and penalties by him collected within a reasonable time thereafter to the proper officer, and accordingly did, from time to time, pay to the county treasurer amounts aggregating the sum of $4,208.73; and as an excuse for not paying to said treasurer before the expiration of respondent's term as clerk of the district court, the difference between said amounts, to-wit, the sum of $1,818.83, the answer avers, in effect, that the items aggregating the sum of $364 in docket 7, at pages 115, 183, 185, and 186, were collected, if at all, by respondent's deputy without respondent's knowledge, and he has no record whatever of said money other than unsigned receipts upon the docket in the handwriting of said deputy, and is of the opinion and firmly believes, and has always believed, and so alleges the fact to be, that he never received said sum or any part thereof; that the items aggregating the sum of $200 in docket 32, page 226, were paid to such deputy during a serious illness of respondent in the month of April, 1895, the same being the last year of his term of district clerk; that his attention was at no time called to said sums, nor did he know that the same, or any part thereof, had ever been paid into his office; that if he had known of same being paid he would have turned the money into the county treasury; that as to the sum of $500, being payment of fine as shown in docket 46, page 232, respondent alleges he was notified by the proper officers and attorney of the city of Omaha, and of the board of education, not to pay said fine to the county treasurer, but to hold the same for said board, and was likewise notified by the county attorney of Douglas county not to pay the amount of said fine to the city treasurer, but to hold the same for the school fund of said county, and in pursuance of and in accordance with

the agreement of the respective attorneys representing, and authorized to represent, the said county, the city of Omaha, and the board of education, respondent held said money until about the 9th day of May, 1897, when he was released from said obligation to hold said fine or to pay the same to the city treasurer by the attorney representing said city and board of education in said matter. Whereupon respondent forthwith paid the full amount of said fine to the county treasurer, as he was at all times ready and willing to do, but for the contentions and agreements of said parties; that the various other items of fines which go to make up the sum of $1,818.83 were paid to respondent on different dates in small amounts, none larger than $100, which were receipted for by him upon the appearance docket; that from time to time he made report to the county commissioners of moneys collected by him for the county, and paid the same to the county treasurer, and intended to include all of those sums, but the same were overlooked and could not with reasonable diligence have been discovered prior to about the date of the payment thereof to the county treasurer; that during the last year of his term as clerk of the district court he had constantly in his employ a person whom he supposed to be a skilled accountant, whose sole duty it was to check up all the dockets and records of said office and report to respondent all moneys received by the latter for the county and for individuals, which had not theretofore been paid over; that during said year respondent made payments of various sums on account of fines as reported by accountant; that at the close of respondent's term said accountant made a purported final tabulated report, which, upon examination, was found to be so imperfect, incorrect, and unreliable that it was put aside as worthless, and a second accountant was engaged to prepare a correct statement; that in accordance with his report respondent, on the 9th day of May, 1897, paid to said treasurer said sum of $1,818.83, which included

all the fines collected and not paid over during his said term; that the duties of clerk of the district court required the keeping of a large number of accounts and extensive records, the handling of large sums of money, and press of business caused the said items to be overlooked; that respondent has had at all times the necessary funds, and has been ready, willing, and able to pay over to the county treasurer said moneys, and did pay the same as rapidly as the same could be ascertained. Denies that at any time he willfully, knowingly, or unlawfully withheld any part of said funds or converted the same to his own use. The answer admits the collection and retention of certain unclaimed witness fees and costs, and avers as a justification for his failure to turn the same into the treasury of the county that the law requiring such payment to be made is unconstitutional and void. To the answer a general demurrer has been interposed by relator, and the cause has been submitted for determination.,

The respondent insists that the information does not state sufficient facts to authorize the issuance of a writ of ouster against him, which proposition we are called upon to consider, since it is a well settled rule of pleading in this state that a demurrer to an answer searches the entire record, and judgment should go against the party whose pleading was first defective in substance. (*Hower v. Aultman*, 27 Neb., 251; *Oakley v. Valley County*, 40 Neb., 400; *Hawthorne v. State*, 45 Neb., 871; *West Point Water-Power & Land Improvement Co. v. State*, 49 Neb., 223.) Under and by virtue of section 11, chapter 12a, Compiled Statutes, 1895, a person elected mayor of a city of the metropolitan class is entitled to the office during the term for which he was chosen, "and until his successor shall be elected and qualified." Substantially the same provision is contained in chapter 10, Laws, 1897. The relator contends that under section 2, article 14, of the state constitution, respondent was ineligible to the office of mayor of the city of Omaha, and hence his

election was void, and that by force of the statutes
relator is entitled to hold over, by reason of the non-
election of a successor, and to discharge the duties and
receive the emoluments of said office. Said section of
the constitution declares: "Any person who is in default
as collector and custodian of public money or property
shall not be eligible to any office of trust or profit under
the constitution or laws of this state; nor shall any
person convicted of felony be eligible to office unless he
shall have been restored to civil rights." It is strenu-
ously urged by respondent that the inhibition against
holding office contained in the first clause of the fore-
going provision is not applicable to the office of mayor
of the city of Omaha for the reason such position is not
an office of trust or profit under the constitution or laws
of the state. It is perfectly plain that the argument
adduced in support of this contention is fallacious. It
is true the office of mayor is not created by the constitu-
tion, and it is likewise obvious that the section of that
instrument already quoted does not confine the disquali-
fication from holding office to constitutional officers
alone, but such inhibition extends as well to every office
of profit and trust created by the state legislature. That
the office of mayor of the city of Omaha is one of profit
and trust there is no room to doubt. By law such officer
is given a salary of $2,500 per annum, a sum equal to
that received by a single judge of this court, besides he
is authorized to receive an additional compensation of
$800 as *ex officio* member and chairman of the board of
fire and police commissioners of the city. The salary
attached to the office, in connection with the numerous
important duties and powers which the law confers upon
the mayor of such city, unquestionably constitutes the
mayoralty an office of trust and profit. Such office is not
created by federal law, or any municipal ordinance, but
was established and brought into existence solely by an
act of the state legislature, which declares the term of
office, designates the amount of salary, and prescribes

the powers and duties of the position. Giving the language of the constitution its plain and ordinary meaning, it is very clear that the office of mayor of the city of Omaha is an office of profit and trust under the laws of the state.

But the contention of respondent, if we correctly understand his counsel, is that the constitutional provision invoked by relator embraces merely state officers or "offices under the state." To so construe the fundamental law is to ignore not only the grammatical construction of the language used by the framers, but as well the plain and ordinary signification of the words. The office of mayor of the city of Omaha is an office under the state. The duties of such officer are not merely municipal, but the law creating the position has imposed upon him many duties and functions which pertain to state affairs, and the enforcement of the general laws of the commonwealth, many instances of which are pointed out on page 10 of relator's brief, such as the mayor is made conservator of the peace, has the power to issue a *posse comitatus*, to order the suppression of riots and breaches of the peace, to remit fines and costs imposed by the police judge for offenses arising under the laws of the state, and, in cases of urgency or necessity, to exercise the functions of an examining or committing magistrate. Such powers derived from a positive state statute, although also clothed with municipal functions, constitute the office of mayor of a metropolitan city an office under the state. An able and exhaustive opinion upon the question was recently rendered by the supreme court of Michigan in *Attorney General v. Common Council*, 70 N. W. Rep. [Mich.], 450, where, after a review of the authorities upon the subject, it was held that the office of mayor of the city of Detroit is an office under the state, within section 15, article 5, of the constitution, which declares: "No member of congress, nor any other person holding office under the United States or this state, shall execute the office of governor." To the same

purport are *Montgomery v. State,* 107 Ala., 372; *Shelby v. Alcorn,* 36 Miss., 273; *State v. Valle,* 41 Mo., 31; *State v. Stanley,* 66 N. Car., 59; *Ogden v. Raymond,* 22 Conn., 379; *Chambers v. State,* 127 Ind., 365; *Burch v. Hardwicke,* 30 Gratt. [Va.], 24. Many other authorities might be added in line with those cited if it were deemed necessary. There are likewise decisions which seemingly lay down a contrary doctrine; some of them are mentioned in the brief of respondent.

A mere reading of section 2, article 14, of the constitution, in connection with the act creating metropolitan cities, leaves no doubt that the office of mayor of the city of Omaha is an office under the laws of the state, since the officer derives his powers solely from, and exercises them in obedience to, a state statute, which imposes duties upon such officer in relation to state affairs, as contradistinguishable from municipal functions. The inhibition against holding public office contained in the first clause of the section of the constitution under consideration extends to "any person who is in default as collector and custodian of public money and property." The question arises whether the respondent, under this provision, was disqualified from being elected to, or holding the office of, mayor. The information charges, and the answer admits to be true, that as clerk of the district court he received certain moneys in payment of witness fees, advanced and lower court costs, which he has failed to pay over to his successor in office or the county treasurer, although the same remained uncalled for in his hands for more than two years from such payment. Relator insists that it was the duty of the respondent to pay to the county treasurer all such unclaimed fees and costs, and this contention is predicated upon plain and positive statutory requirements. By section 39, chapter 28, Compiled Statutes, it is made the duty of each clerk of the district court, county judge, and justice of the peace to report to the county commissioners of the respective counties quarterly all witness fees which

have been received in their, or either of their, hands uncalled for by the parties thereto for the period of six months after the same have been paid; and within twenty days after the filing of such report the county commissioners are required to publish a notice thereof for two weeks in a weekly newspaper of general circulation published in the county. Section 40 declares: "All fees remaining in the hands of such district clerk, county judge, or justice of the peace for the period of six months after the same has been reported by them to the county commissioners shall be paid over to the treasurer of the county, who shall receipt in duplicate for the same, one of which receipts shall be filed with the county clerk, and all such fees shall be credited to the common school fund of the county." Section 1, article 2, chapter 80, Compiled Statutes, provides: "That all unclaimed fees and costs which have been paid and not demanded for two years shall be paid in by the justice or clerk of any court under whose control such unclaimed fees and costs may be to the school fund of the respective county where such money belongs." Under the provisions of the foregoing sections, if they are valid and binding, it was the bounden duty of the respondent to pay to the county treasurer all unclaimed witness fees and costs in his hands for the benefit of the school fund. It is argued that said sections of the statute are inimical to sections 3 and 21 of article 1 of the constitution, which are as follows:

"Section 3. No person shall be deprived of life, liberty, or property without due process of law.

"Section 21. The property of no person shall be taken or damaged for public use without just compensation therefor."

That the unclaimed witness fees and costs retained by the respondent are property, in a legal and constitutional sense, every one must admit, and the fundamental law, therefore, forbids that the witness or person for whose benefit such fees and costs were paid shall be

deprived of his right to the same except by due process of law, or that such fees or costs should be appropriated by the public without adequate compensation therefor being made. The legislature, in violation of the foregoing provisions of the Bill of Rights, has arbitrarily, without a hearing, or the making of any provision for one, and without any remuneration whatever, attempted to appropriate all unclaimed witness fees and costs to the support of the common schools. This cannot be lawfully done, no more than the legislature could by statute require the payment into the county treasury, for the use of the school fund, all moneys received by the clerk of the district court upon judgments which have not been demanded of such clerk within a specified period, and no person would have the temerity to contend that such a law would be valid. The statute before us might be upheld had it merely made provision for the payment into the county treasury for safe-keeping the unclaimed fees and costs until such time as the same shall be demanded by the parties to whom the same are due. But no provision whatever is made in the law for the recovery of the funds by the person entitled thereto. The legislature has attempted, in violation of the constitution, to appropriate to the use of the public without compensation all unclaimed costs and fees. Such legislation is clearly obnoxious to sections 3 and 21 of the bill of rights, and therefore is unconstitutional and void. This conclusion is sustained by the principle underlying the following authorities, and no case sustaining a contrary doctrine has come under the observation of the writer. (*Turner v. Althaus*, 6 Neb., 54; *Johnson v. Hudson*, 96 Tenn., 630; *Bank of Louisville v. Board of Trustees of Public Schools*, 83 Ky., 219; *Varden v. Mount*, 78 Ky., 86; *Marshall v. McDaniel*, 12 Bush [Ky.], 378; *Gilman v. Tucker*, 128 N. Y., 190; *Ames v. Port Huron Log Driving & Booming Co.*, 11 Mich., 139; *Rockwell v. Nearing*, 35 N. Y., 302.) The legislation in question being invalid, the moneys received by the respondent on account of

State v. Moores.

fees and costs are not public funds, and he was not required to pay the same to the treasurer of Douglas county.   Had he done so, it would not have exonerated him from personal liability to pay the same to the various witnesses or persons lawfully entitled thereto.   The failure of the respondent to pay to the county the unclaimed fees and costs did not render him ineligible to the office of mayor.

In the foregoing discussion we have not overlooked sections 28 and 29, chapter 28, Compiled Statutes.   They authorize the taxation as costs of a jury fee of $6 in each case of a conviction in a criminal prosecution, and in civil cases a jury fee of $5, and a fee of $1 for each trial by the court, and all of which items of costs, when collected, are required to be paid into the county treasury for the use of the county.   Unquestionably costs taxed and collected under the provisions of said sections are public moneys within the purview of the constitution. But those sections have no application here, inasmuch as the information does not allege that the respondent has collected and retained any funds whatever on account of jury or trial fees, while, on the other hand, it is specifically charged that certain unclaimed witness fees, advanced and lower court costs have been received by the respondent and converted to his own use.   Whether a clerk of the district court, as to fines received by him in satisfaction of sentences imposed in his court, is a collector and custodian of public money in a constitutional sense is not raised in the answer of the respondent, nor discussed in the briefs, hence we would be justified in ignoring the question at this time, but we shall not do so.   The word "collector" is defined in the Standard Dictionary as "an official who collects or receives taxes, duties, or other public revenues."   To constitute an official a collector he need not possess the power to enforce payment by legal process.   It is sufficient if he is authorized by law to receive the money for and on behalf of the public.   A "collector and custodian," within the

meaning of the section of the constitution under consideration, embraces every person who is given the legal power to collect, demand, or receive taxes or other public dues or moneys, and retain the same in his possession for any time however short or long. And this definition is sufficiently comprehensive to include the clerk of the district court as to moneys paid him on account of fines. This court has held, independent of any statutory provision, that a clerk of the district court is authorized to receive moneys upon a judgment in his office, and that a payment to him will bind the judgment creditor. (*McDonald v. Atkins*, 13 Neb., 568; *Moore v. Boyer*, 52 Neb., 446.) By section 533 of the Criminal Code all moneys due upon any judgment for fines, costs, or forfeited recognizance are required to be paid to the magistrate or clerk of the court where the judgment is rendered. And the next section requires that such magistrate or clerk of court shall pay such money to the county treasurer, except as otherwise expressly provided, within ten days from the time of receiving the same. All fines and penalties imposed under the general laws of the state, by section 5, article 8, of the constitution, are declared to belong to the county school fund, and are required to be paid to the county where the same were imposed. That the fines and penalties collected by the respondent were and are public moneys cannot be successfully disputed, and it is just as plain that it was his duty to receive and pay the same over to the proper officer. He was a collector of the money in a constitutional sense, and when he received it he was the legal custodian thereof, at least for the period of ten days, in case he desired to retain possession of the money for that length of time. It was the intention of the framers of the constitution, and it is with sufficient clearness so expressed in the instrument, that every person who by virtue of law collects or receives public funds of whatever character and makes default in paying the same over to the proper authorities should be ineligible to any office

created by the constitution or statutes of this state. The provision is a wholesome one, and should be enforced in no captious spirit.

The information discloses that the respondent as clerk of the district court collected and received in fines and penalties, which he retained in his hands for more than one year after his term of said office expired, and had failed to pay the same to the officer entitled thereto at the date of his election as mayor, the sum of $2,061.20, and that $242.37 of said amount yet remains unpaid, and has been by the respondent converted to his own use. The information therefore shows that he is at this time in default as collector and custodian of public funds, at least to the amount last named, and if the matters pleaded therein are true, he is ineligible to the office of mayor of the city of Omaha. This much as regards the sufficiency of the information. It states a cause of action.

It remains to be seen whether the facts set up in the answer relating to the moneys received by the respondent from fines and penalties constitute a defense to this proceeding. It avers that every dollar received by him from that source has been fully accounted for and paid over to the county treasurer, and all excepting the sum of $1,818.83 was so paid prior to respondent's election as mayor, and the last named amount was paid by him before entering into the duties of said office. If the term "eligible," as used in section 2, article 14, of the constitution, refers alone to the capacity to hold, and not to be elected and chosen to, an office, it is obvious that respondent does not come within the inhibition of said provision of the constitution. But respondent has not contended that if he was a defaulter at the time of his election he is eligible to hold the office in question, though all arrears were paid before he assumed the duties of mayor. Doubtless, the reason he has made no such contention here is that he regarded the question foreclosed against him by the decisions in *State v. McMil-*

54

*len,* 23 Neb., 385; *State v. Boyd,* 31 Neb., 682.   In each of
those cases it was ruled that the word "eligible" referred
to the time of election, and not to the period of entering
upon the office.   Perhaps those decisions may be ex-
plained away and distinguished upon the ground that
they were based upon provisions unlike the section of
the constitution now under consideration; but to hold
that the disqualification has reference alone to the time
of assuming the duties of public office is to disregard the
etymology of the word "eligible."   The definition given
it in the Standard Dictionary is "Capable of being
chosen; qualified for selection or election.   Fit for or
worthy of choice or adoption."   The word is similarly
defined in the Century and other dictionaries.   The term
"eligible," as employed in the constitution, should be
given its plain and ordinary signification, and when so
construed there is no escaping the conclusion that it
means capable of being elected or chosen.   Neither the
framers of the constitution, nor the people in adopting
it, intended to permit a person to be elected to a public
office who, at the time, was disqualified from entering
upon the duties thereof, and run the risk of the removal
of the disability between the day of election and the com-
mencement of the official term.   One who is in default
as collector and custodian of public money or property
is disqualified from being legally elected to any office of
profit or trust under the constitution or laws of the
state.   This is the plain and natural construction of the
language of the constitution.   These views find abun-
dant support in the authorities.   (See *Territory v. Smith,*
3 Minn., 240; *Taylor v. Sullivan,* 45 Minn., 309; *State v.
Clarke,* 3 Nev., 566; *Searcy v. Grow,* 15 Cal., 117; *People
v. Leonard,* 73 Cal., 230; *Drew v. Rogers,* 34 Pac. Rep.
[Cal.], 1081; *In re Corliss,* 11 R. I., 638; *Carson v. Mc-
Phetridge,* 15 Ind., 327; *Jeffries v. Rowe,* 63 Ind., 592; *Hill
v. Territory,* 7 Pac. Rep. [Wash.], 63.)   There is a divi-
sion in the authorities upon the subject, but the ones
cited above and those in line therewith, are believed to

State v. Moores.

be sustained by the better logic. If respondent were in default at the time of his election as mayor, his disability to hold the office was not removed merely by the subsequent payment of the money into the county treasury. The sufficiency of the answer therefore, to a considerable extent, must depend upon the construction that shall be placed upon the word "default" employed in said section 2, article 14, of the constitution. More than one definition is given the word "default" in the dictionaries. Thus, in the Standard it is defined as "1. A failure in the performance or fulfillment of an obligation; neglect or omission of a legal requirement. * * * 3. A wrong action; fault; transgression." While in Anderson's Law Dictionary the same word is defined as "Something wrongful; some omission to do that which ought to have been done. Nonperformance of a duty; as, the nonpayment of money due." And the same authority gives this definition to the word "defaulter": "One whose peculations have brought him within the cognizance of the law, to the extent, at least, of excluding him from a public trust."

Counsel for relator argued that the mere failure of the respondent to pay money at the time required by law constituted a default, whatever may have been the reasons for nonpayment. In one sense this is true. Good motives, intentions, or purposes most certainly would not exonerate him from a civil liability on his bond. But that is not the test to be applied here. The provision of the constitution is penal in its nature, and it was not intended by the framers thereof that a person should be disqualified from holding a public office merely because he might, through no fault of his own, be liable in a civil action as a collector and custodian of public funds. To render one ineligible there must have existed such willful conduct, omission of duty, or wrongful action, that the intent to misappropriate money or property belonging to the public is fairly inferable therefrom. If a civil liability is the crucial cri-

terion to be applied here, then every county treasurer comes within the inhibition of the constitution who has failed to pay over public money of which he has been robbed, or which while in his hands was destroyed by fire, or who failed to pay to his successor the true amount with which he was chargeable on account of an error or mistake accidently made by his deputy in adding a column of figures. In each of the supposed cases the treasurer would be liable in a civil action for the money, but that would not necessarily render him in default in a constitutional sense. "In the constitutional disqualification to hold office is the idea not only of debt, but with default with dishonor—not only that the collector owes, but that he owes the money collected and in his hands—not only that he is a debtor, but defaulter. * * * The evident object and dominant idea of the framers of the Constitution was to exclude from office defaulting tax collectors and other public functionaries; they had no purpose or intention of making the eligibility of the citizen to hold office depend upon mere pecuniary liability to the state." (*State v. Sheriff*, 45 La. Ann., 163.)

In *State v. Kountze*, 12 Mo. App., 511, the defendant was convicted of the offense of publishing a libel in these words: "Captain John was elected harbor-master of St. Louis, and could not qualify because he was a defaulter." The court, in the opinion, used the following apposite language: "It is objected that the word 'defaulter' has many meanings which impute nothing criminal, and that, therefore, the indictment is defective in not showing, by innuendo or otherwise, that the word was used and understood in a sense implying crime. There are many words in our language which may convey crime, or something very different, according to the connection in which they appear. 'You have stolen my heart;' implies nothing more than a certain ascendency acquired over the speaker's affections, while, 'You have stolen my purse;' as clearly imputes a larceny. When the term

defaulter is employed to explain a disqualification for holding a public office, but one meaning can attach to it in the minds of all persons of ordinary intelligence, who have a common familiarity with the English language and its most popular idioms.   No one will naturally connect it with a mere delinquency as to minor social obligations, or the payment of ordinary debts. The universal application of the word in that connection is matter for judicial notice.   It describes one whose peculations have brought him within the cognizance of the law, to the extent, at least, of excluding him from a public trust.   So to describe a citizen who is free from that stigma, is libelous."

*People v. Hamilton*, 24 Ill. App., 609, is quite in point here.   That was an information in the nature of *quo warranto* to test the right of the respondents Hamilton and Grogan, respectively, to hold the office of trustee of the village of Ashland.   Each at the time of his election owed a village tax, which fact it was claimed constituted a disqualification to hold the office, under a statute providing that "no person shall be eligible to the office of Alderman unless   *   *   *; nor shall he be eligible if he is in arrears in the payment of any tax or liability to the city."   Hamilton paid $1.44, the amount of his tax, after his election and before assuming the duties of the office. Grogan owed the sum of 44 cents for village tax, which was not paid until after he had entered upon the office. Prior to his election, however, he wrote to the sheriff, as tax collector of the county, requesting the amount of his taxes, who in reply sent a statement which did not include said 44 cents for taxes on personal property. Grogan paid the sum stated by the sheriff prior to the election, and was unaware of the amount of said personal tax before election else he would have paid it with the other.   The court held Grogan was not in arrears within the meaning of the law, saying: "It was never intended that the accidental omission to pay the trifling sum of less than a half dollar, where there had

been an honest intent and effort to pay all that was due, should exclude a citizen who was the choice of the people from holding the position to which he was elected. Such a case is not within the spirit, and hardly within the letter, of the law."

The section of the constitution under consideration has made two classes ineligible to public office under the constitution or laws. Those who are defaulters, or in default as collector and custodian of public money or property, and those who have been convicted of a felony, but have not been restored to civil rights. As to the first class, the disability to hold office is not made permanent, but is temporary, so long merely as the person remains a defaulter, and ceases the moment he has fully accounted for and paid over the public funds or delivered the property. To render one in that class ineligible it is not essential that it should have been judicially ascertained that he was in default. But there must exist, in addition to a liability in a civil action, a willful omission to account and pay over with a corrupt intention, or such a flagrant disregard of duty as to justify the inference that his conduct was willful and corrupt. Testing the answer by this rule, do the averments therein contained, if true, disclose that in a constitutional sense respondent was a defaulter at the date of his election to the office of mayor? The statute requires him to account for and pay over to the county all fines within ten days from his receipt thereof. This provision is mandatory, and that respondent did not comply therewith is admitted. But that alone did not render him ineligible to office, although such fact may be properly considered in determining whether the intention to misappropriate the funds existed. If the constitution permanently disqualifies the defaulter from holding office, then the willful failure to pay over the money within the time designated by law would render him ineligible to the office of mayor. But, as we have already seen, one may purge himself of the default at any

time by making payment, and the authorities cited in the brief of relator so hold. The answer discloses that prior to respondent's election he had paid to the county treasurer all the fines and penalties received by him, except the sum of $1,818.83. If this last named amount, or any portion thereof, was intentionally, willfully, or corruptly retained by respondent, he was ineligible to the office in question. Of the items which go to make up the said sum, the answer states, in effect, that $364 were never received by respondent or his deputy; that the item of $200 was paid during the serious illness of respondent to his deputy, and that the principal was unaware of such payment, or the money would have been covered into the treasury; and that the further sum of $500 was retained and held upon the agreement, request, and demand of the county attorney and the attorney for the city of Omaha and the board of education that the same be held pending a controversy over the ownership of the money, and that respondent was at all times ready and willing to pay the same to the county, and would have done so but for such contention and agreement. Those matters pleaded were sufficient to relieve him from being a defaulter as to such items. It is undoubtedly true that the alleged agreement for the detention of the said sum of $500 would not have constituted a defense to a civil action brought for the recovery of the money, but that is not the test for determining whether respondent was a defaulter or not. If in good faith he retained the $500 under the circumstances pleaded, and did not convert the same to his own use, then it cannot be said that he acted corruptly in not paying the same over to the county treasurer.

The only doubt the writer has entertained as to the sufficiency of this answer has been with reference to the excuse set up for not having paid over before election the remainder of said sum of $1,818.83, to-wit, $754.83. It is admitted that the items which go to make up said sum were paid to the respondent personally in sums not

exceeding $100, and that he overlooked such payments until after the expiration of his term, and with reasonable diligence the same could not have been discovered by him prior to the date of the payment thereof to the county. If there were no other averments contained in the answer we should hesitate before deciding that the pleading is sufficient. But as it is positively alleged, and by the demurrer admitted to be true, that it was never the intention of the respondent to, and he did not in fact, appropriate any portion of the funds collected to his own use, and that he did not willfully or knowingly withold any portion thereof, but paid the same to the county treasurer as rapidly and as soon as he was cognizant that he had received the money, we are constrained to the opinion that the demurrer to the answer should be overruled, with leave to the relator to reply, as he has signified a desire so to do.

DEMURRER TO ANSWER OVERRULED.

POST, C. J., and RYAN, C., concurring.

HARRISON, J.

I concur in the views expressed by Judge NORVAL in the opinion of the court and which are stated by Commissioner RAGAN relative to certain of the questions presented for discussion and decision in this action. The conclusions to which I agree are stated by Judge NORVAL:

"The office of mayor of a city of the metropolitan class is an office of profit and trust under the laws of this state.

"Unclaimed witness fees and costs remaining in the hands of the clerk of the district court are not public moneys; and the legislation of this state, in so far as it attempts to divest the persons for whose benefit such fees and costs are paid of title thereto, is unconstitutional and void."

A proper interpretation of the terms of the section of the constitution invoked herein by the relator in connection with the law which prescribes the duties of a clerk of the district court in regard to fines and penalties leads me to conclude that while it may be possible that he has been made a collector, he is not a custodian. He cannot be charged as the latter under a fair reading and rendering of the law. The language of the section of the constitution is "collector and custodian." (Constitution, art. 14, sec. 2.) Of this every word must remain as written by the constitution makers and adopted by the people and be allowed its ordinary accepted signification. To drop from the phrase the word "and" and insert in its place "or," as has been suggested in argument should be done, would be to change and do violence to both the letter and the spirit or intent. If the respondent, as clerk, was not a custodian of the fines and penalties, it follows from the effect of this and the other conclusions to which I agree that the relation or information herein did not state a cause of action. The demurrer to the answer searches the record, and is fatal to the first defective pleading in order of filing,—the relation,—and the judgment must be against the relator. A dismissal of the action should be entered. This would dispose of the cause and render unnecessary a discussion of some other questions which were argued, and I prefer to express no opinion on such further questions.

RAGAN, C., dissenting from the order of the court.

The questions presented by this record must be answered by construction of section 2, article 14, of the constitution, which is as follows: "Any person who is in default as collector and custodian of public money or property shall not be eligible to any office of trust or profit under the constitution or laws of this state." The questions involved are: (1) Is the office of mayor of the city of Omaha an "office of trust or profit," within the meaning of this section of the constitution? (2) What

is the meaning of the word "eligible," found in said section? (3) Do witness fees remaining in the hands of a clerk of a district court unclaimed and uncalled for, for more than one year, become public funds? (4) What is the meaning of the term "in default" in said section of the constitution? (5) Is a clerk of a district court a "collector and custodian" of public funds within the meaning of said section of the constitution?

Is the office of mayor of the city of Omaha an office of trust or profit under the constitution or laws of the state of Nebraska within the meaning of said section? By the law under which the city of Omaha is created its mayor is made its chief executive officer. He is conservator of the peace, and invested with power to appoint and dismiss policemen, with the consent of the board of fire and police commission. He is invested with authority, and it is made his duty, to enforce the quarantine and health regulations of the city. By virtue of his office he is chairman and a member of the board of fire and police commission. He is invested with the power to suppress riots and disturbances of the peace. He is invested with the executive power to remit fines and penalties imposed by the police judge for offenses against the ordinances of the city and the laws of the state. By the statute he is also invested with certain of the judicial powers of a justice of the peace; and generally it is made his duty to see to it that the laws of the state as well as the ordinances of the city of Omaha are obeyed and enforced within the limits of said city. The city of which he is mayor is one of the agencies of the state created for the purpose of carrying on and maintaining the state government; and while it is true that the city of which he is the chief officer is a municipal corporation, it is in no sense a private corporation. The word "office," as used in this constitution, means a public political office, and the office of mayor of Omaha is such an office. It is a public office. It is of a political nature, and the purpose for which it exists is a public purpose,—

a purpose in connection with the operation and adminis-
tration of the state government. That it is an office of.
dignity and trust and great responsibility is readily
apparent from the nature of its functions; and if such
an office must yield a pecuniary compensation to its
occupant in order to make it an office of profit, then it is
such an office, as the salary or compensation paid its
occupant is $3,300 per year. We have no doubt but that
the office of mayor of the city of Omaha is an office of
trust or profit within the meaning of said section 2, arti-
cle 14, of the constitution.

2. What is the meaning of the word "eligible" found
in said section of the constitution? The rule is that in
the construction of a statute or constitution the cardinal
object is to ascertain and give effect to the intention of
its framers; and, to enable the courts to ascertain the
intention of the law makers, the words should be given
their ordinary signification. Webster defines the word
"eligible" as follows: "Proper to be chosen; qualified to
be elected; legally qualified; as eligible to office." The
Standard Dictionary's definition of the word is: "1.
Capable of being chosen; qualified for selection or elec-
tion.   2. Fit or worthy of choice or adoption; suitable."
The definition given of the word in Anderson's Law
Dictionary is: "Relates to capability of holding as well
as of being elected to an office."

The constitution of the state of California provided
(art. 4, sec. 20): "No person holding any lucrative office
under the United States, or any other power, shall be
eligible to any civil office of profit under this state."
One Grow was a postmaster in California, and while
holding that office was elected sheriff of his county.
After his election, and before his induction into the
office of sheriff, he resigned as postmaster. His right to
the office was contested on the ground that at the time
he was elected he was ineligible under the provision of
the statute just quoted. Baldwin, J., in *Searcy v. Grow*,
15 Cal., 118, speaking for the supreme court of California,

said: "Counsel for the appellant contends that the true meaning of the constitution is that the person holding the federal office  *  *  *  is forbidden to take a civil state office while so holding the other; but that he is capable of receiving votes cast for him, so as to give him a right to take the state office upon or after resigning the federal office. But we think the plain meaning of the words quoted is the opposite of this construction. The language is not that the federal officer shall not hold a state office while he is such federal officer, but that he shall not, while in such federal office, be eligible to the state office. We understand the word "eligible" to mean capable of being chosen,—the subject of selection or choice. The people in this case were clothed with this power of choice. Their selection of the candidate gave him all the claim to the office which he has. His title to the office comes from their designation of him as sheriff. But they could not designate or choose a man not eligible,—i. e. not capable of being selected. They might select any man they choose, subject only to this exception: that the man they selected was capable of taking what they had the power to give. We do not see how the fact that he became capable of taking the office, after they had exhausted their power, can avail the appellant. If he was not eligible at the time the votes were cast for him, the election failed. We do not see how it can be argued that, by the act of the candidate, the votes which, when cast, were ineffectual because not given for a qualified candidate, became effectual to elect him to office." This section of the California constitution was construed by the supreme court of that state as late as 1887 in *People v. Leonard*, 14 Pac. Rep., 853; and it was held that the constitutional provision should be construed to mean eligible to hold office as well as to be elected to office; and hence, where one was elected a state supervisor, and was eligible at the time, but after his election accepted and entered upon the office and duties of a federal appointment, that his

acceptance of the latter office disqualified him from holding the state office.

The constitution of Indiana provided (section 176): "No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any office of trust or profit under the state, other than a judicial office." Wallace was mayor of the city of Indianapolis and some of the duties devolving upon him as such mayor were judicial in their nature. He was elected mayor for two years and within the two years resigned his office of mayor, was a candidate for and elected sheriff of his county, and the court held that under the constitution of the state of Indiana he was not eligible for election as sheriff. (See *Waldo v. Wallace*, 12 Ind., 569. To the same effect see *Gulick v. New*, 14 Ind., 93; *Howard v. Shoemaker*, 35 Ind., 111.) The constitution of 1851 of the state of Indiana provided (art. 6, sec. 2.): "No person shall be eligible to the office of clerk, recorder, or auditor more than eight years, in any period of twelve years." One McPhetridge was elected circuit clerk in 1845 for a term of seven years. In October, 1852, he was re-elected for four years. At the October election in 1856 he was again elected for four years. His last term would expire in 1860. At the October election in 1859 Carson was voted for, for clerk, and claimed to be entitled to the office as the successor of McPhetridge. Carson's contention was that under the constitution of 1851 McPhetridge could not hold the office of clerk longer than eight years from November 1, 1851, and that by reason of said constitution, became disqualified to hold the office of clerk after November, 1859. This contention the supreme court in a *quo warranto* proceeding sustained. In the opinion the court said: "The term 'eligible,' as used in our constitution, relates to capacity of holding, as well as capacity of being elected to, an office." (See *Carson v. McPhetridge*, 15 Ind., 327. To the same effect see also *Jeffries v. Rowe*, 63 Ind., 592.) In *Smith v. Moore*, 90 Ind., 294, the consti-

tutional provision of that state that "No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any office of trust or profit under the state, other than a judicial office," was again construed; and the conclusion was reached by the majority of the court that the term "eligible" in the constitution meant legally qualified and that one holding a judicial office was eligible for election to an office nonjudicial, the term of which would begin after his judicial term expired. The force of this opinion, however, is entirely destroyed by the able and exhaustive dissenting opinion of Elliott, J. In *State v. Bemenderfer*, 96 Ind., 374, *Smith v. Moore, supra,* is virtually overruled. The cases cited above from the 15th and 63d Indiana Reports are cited with approval and the court by unanimous opinion holds that the meaning of the word "eligible" in the constitution of Indiana means capable of being chosen.

The constitution of Nevada provides (art. 4, sec. 9): "No person holding any lucrative office under the government of the United States, or any other power, shall be eligible to any civil office of profit under this state." In November, 1866, one Clarke was elected attorney general of the state of Nevada and on January 7, 1867, entered upon the duties of that office. At the time of his election in 1866, he was United States district attorney for the state of Nevada. On October 25, 1866, Clarke conditionally resigned the office of United States district attorney, the resignation to take effect on January 1, 1867. In a *quo warranto* proceeding to test the title of Clarke to the office of attorney general the supreme court of Nevada, in *State v. Clarke*, 3 Nev., 566, discussing the meaning of the word "eligible" in the Nevada constitution, said: "The relator contends that the plain and unmistakable meaning of the word is 'capable of being elected or chosen.' The defendant, on the other hand, contends that, as used in this section, it means not 'capable of being chosen,' but 'capable of holding.' * * * We

agree with the defendant that the framers of the consti-
tution intended to prohibit one who was holding a lucra-
tive federal office from holding a state office at the same
time.   But instead of restricting the meaning of the
word 'eligible'   *   *   *   we think, to carry out the in-
tention of the constitutional convention, we ought rather
to give it a more extended signification than is generally
given, and hold that it means both 'incapable of being
legally chosen,' and 'incapable of legally holding'."   And
the court held that Clarke was ineligible to election as
attorney general.

A statute of Minnesota prescribed six months' resi-
dence in the territory as a qualification for election to
office; and in *Territory v. Smith*, 3 Minn., 164, the court
held that a party to be eligible to election to office in the
territory must have resided therein for six months prior
to the date of the election; that it was not sufficient that
he resided in the state six months prior to the time he
took office.   (To the same effect see *State v. Williams*, 99
Mo., 291.)

In *State v. Murray*, 28 Wis., 96, it was held that an
alien who had not declared his intention to become a
citizen of the United States might be elected to the office
of clerk of the county board of supervisors in the state of
Wisconsin; and in case he had declared his intention to
become a citizen of the United States before the com-
mencement of his term of office he was entitled to enter
upon and to hold the office; but in this case the court
said that the term "ineligible" meant disqualification
to hold an office as well as disqualification to be
elected to an office.   The opinion in the case, however,
did not turn upon any constitutional or statutory provi-
sion of the state.   In *State v. Trumpf*, 50 Wis., 103, the
rule announced in *State v. Murray, supra*, was adhered to;
but it was conceded that the rule was wrong.

A statute of Illinois provided (1 Starr & Curtis Ann.
Stats., ch. 24, art. 3, par. 34): "No person shall be eligible
to the office of alderman   *   *   *   if he is in arrears in

the payment of any tax or liability due the city." Another statute relating to villages, and providing for the election of trustees therefor, provided that "Wherever the words 'city council' or 'mayor' occur in this act the same shall be held to apply to the trustees and president of such village, so far as the same may be applicable." (Starr & Curtis Ann. Stats., ch. 24, art. 11, par. 192.) Hamilton and Grogan were elected trustees of the village of Ashland in the state of Illinois. Each one of them was in arrears at the time of his election in a small sum for taxes. In a *quo warranto* proceeding to test their right to the office as trustees the appellate court of Illinois in *People v. Hamilton*, 24 Ill. App., 609, held that they were not ineligible to the office of trustees of the village because their taxes were in arrears at the time they were elected; but the decision is not predicated upon the court's definition of the word "eligible" in the Illinois statute, but its decision rested on the point that the statute which rendered one in arrears for taxes ineligible to the office of alderman had no reference to village trustees.

The constitution of Kansas provided (art. 5, sec. 2): "No person who has ever voluntarily borne arms against the government of the United States * * * shall be qualified to hold office in this state, until such disability shall be removed by law." One Privett had voluntarily borne arms against the government of the United States during the late Rebellion. At the general election held in Kansas in November, 1880, he was elected sheriff. After his election and before taking possession of the office his disability to hold office was removed. In a *quo warranto* proceeding to test his title to the office the court held that under the constitution of Kansas just quoted, though he was ineligible to the office at the time he was elected, he was qualified to hold the office when his term began, because at that time his disability had been removed. (See *Privett v. Bickford*, 26 Kan., 52.)

These are not all the cases, by any means, in which the

meaning of the words "eligible" and "ineligibility," found in statutes and constitutions, have been considered. But we think the greater number of the adjudicated cases, as well as the decided weight of authority, sustain the proposition that the word "eligible" means both competent or capable of being elected to office, and competent or capable of holding office. And we are of opinion that the word "eligible" found in section 2, article 14, of our constitution means that any person who is "in default" as a collector and custodian of public money or property is not during the existence of such default competent or capable either of being elected to or holding an office of trust or profit under the constitution or laws of this state. If any person is in default as a collector and custodian of public money or property, he is ineligible to election to any office of trust or profit under the constitution or laws of this state. If any person is not in default as a collector and custodian of public money or property, at the time he is elected to an office of trust or profit under the constitution or laws of this state, but at the time of assuming the duties of such office becomes in default as a collector and custodian of public money or property, such default renders him incompetent to take the office to which he is elected; and if after he has assumed the duties of the office to which he is elected he becomes in default as a collector and custodian of public money or property such default renders him incapable, and disqualifies him from continuing, to hold such an office. Not one of the cases reviewed above is authority for the contention made here that the word "eligible" found in our constitution refers solely to legal qualification to hold office. Nor, after a somewhat protracted examination, have I been able to find any case where the word "eligible" was given such a construction when used in a law or constitution like ours. The framers of our constitution, bearing in mind the importance of the prompt and faithful collection and accounting for of the revenue of the state, designed by

55

this provision of the constitution to encourage and stimulate collectors and custodians of public funds to perform their duties. It was never the intention of the framers of the constitution that a collector and custodian of the public revenue of the state might negligently, carelessly, or criminally fail to account for the public revenue or property in his hands, take the chances of election to an office of trust or profit, and, if elected, then qualify himself to hold the office by complying with the law. To give the constitution this construction, I submit, is to refuse to follow the great weight of authority upon the subject and in effect to repeal the constitution itself. Section 7, article 6, of the constitution provides: "No person shall be eligible to the office of judge of the supreme court unless he shall be at least thirty years of age, and a citizen of the United States; nor unless he shall have resided in this state at least three years next preceding his election." To construe the word "eligible" found in section 2, article 14, of the constitution as meaning legally qualified to hold an office, then it would necessarily follow that a man would be eligible to be elected judge of this court if twenty-nine years of age, provided at the time he was inducted into the office he had attained the age of thirty years. It would follow that if one had declared his intention to become a citizen of the United States he would be eligible to be elected judge of this court and qualified to hold that office if at the time of his induction into the same he had become a citizen of the United States. It would follow that one would be eligible to election as a judge of this court though he had not resided three years in this state at the time of his election, but it would be sufficient if at the time he was inducted into office that he had been a resident of the state for three years. And yet I think the obvious, plain, and ordinary meaning of said section 7, article 6, of the constitution is that no one is eligible to election of judge of this court unless at that time he be thirty years of age and a citizen of the United

States and unless he shall have resided in this state at least three years next preceding the date of his election. (*State v. Boyd*, 31 Neb., 682.)

This constitution is not framed in technical or abstruse language. It speaks the ordinary, every-day language of the people. It expresses the supreme will of the people, and, in construing it, that will should be ascertained and determined from giving to the words of the instrument their ordinary and usual meaning; and when this is done there is no room for the contention that the framers of section 2, article 14, of the constitution did not mean exactly what they said when they declared that no person who is in default as collector and custodian of public money or property shall be eligible,—that is, capable of being chosen,—to any office of trust or profit under the constitution or laws of this state.

3. Are witness fees in the hands of a clerk of a district court, which have been unclaimed and uncalled for by the owner thereof for more than one year from the time they were paid to such clerk, public funds, within the meaning of said section of the constitution? Section 39, chapter 28, Compiled Statutes, provides that where witness fees shall be paid to a clerk of a district court, and shall not be called for by the parties entitled thereto for a period of six months after their payment to the clerk, he shall make a list under oath of the causes in which said fees have been paid and remain uncalled for, with the amount of such witness fees, and file the same with the board of county commissioners of his county; and that, within twenty days after the report is filed with them, the commissioners shall cause a notice to be published directed "to whom it may concern," reciting the fact of the presence of such witness fees in the hands of the clerk of the district court, and if they shall not be called for by the parties entitled to them within six months from the date the clerk reported them to the commissioners, such fees shall be forfeited and

paid to the common school fund of the county. Section 40 of said chapter provides that all witness fees remaining in the hands of a clerk of the district court for six months after the date of his making his report thereof to the board of county commissioners shall be by said clerk paid over to the county treasurer. I think these sections, 39 and 40, are unconstitutional and void. By this legislative act, the property of the citizen is attempted to be taken for public use for no crime or debt of the citizen, and not as a punishment for any crime; and it is taken without any compensation being rendered the citizen therefor, and in this respect it violates section 21, article 1, of the bill of rights. By this act the legislature has also attempted to deprive the citizen of his property without due process of law and in this respect it violates section 3, article 1, of the bill of rights. Unclaimed witness fees in the hands of a clerk of a district court are property which belongs to the witnesses or to some litigant who has advanced the fees and recovered a judgment for them as costs against some other litigant; and the legislature is not depriving the citizen of his property by due process of law by simply providing that such citizen shall forfeit his property lawfully in the hands of a public official unless it be called for by a certain date. The legislation under consideration does not even provide that the owner of property shall have personal notice of the intention of the state to deprive him of his property. A clerk of a district court holds such witness fees in trust for the owners thereof, and, at the expiration of his term of office, he should pay such fees over to his successor in office. But such fees are not public funds, within the meaning of section 2, article 14, of the constitution. They are in all respects private property, and, while the clerk of a district court or his successor in office is the legal custodian of such fees until called for, he holds them in trust for the owners. On this branch of the case I reach the conclusion that a clerk of a district court who has neglected

and failed to pay to the county treasurer witness fees in his hands which have been there unclaimed for a year or more is not by reason of such neglect in default as a collector and custodian of public funds.

4. What is the meaning of "in default" in said section 2, article 14, of the constitution? Section 5, article 8, of the constitution provides: "All fines, penalties, and license moneys arising under the general laws of the state, shall belong and be paid over to the counties, respectively, where the same may be levied or imposed, and all fines, penalties, and license moneys arising under the rules, by-laws, or ordinance of cities, villages, towns, precincts, or other municipal subdivision less than a county, shall belong and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of common schools in the respective subdivisions where the same may accrue." Section 534 of the Criminal Code of the state provides: "Every magistrate or clerk of court upon receiving any money on account of forfeited recognizances, fines, or costs, accruing or due to the county or state, shall pay the same to the treasurer of the proper county, except as may be otherwise expressly provided, within ten days from the time of receiving the same." In the case at bar, while the respondent was clerk of the district court of Douglas county, there were paid to him certain fines and penalties which by the provision of the statute just quoted became and were public funds and belonged to the common school fund of the state. These public funds the statute just mentioned required the respondent to pay to the county treasurer of Douglas county within ten days after their receipt. It stands admitted in the record that the respondent did not pay certain of these fines and penalties to the county treasurer of Douglas county within ten days after their receipt, nor during his term of office as clerk; that he had not paid the same to the said county treasurer at the time he was elected mayor

of the city of Omaha, but that he had paid to said treasurer said fines and penalties at the time he was inducted into the office of mayor. Was the respondent, at the time he was elected mayor of the city of Omaha, in default within the meaning of said section 2, article 14, of the constitution, if within the meaning of said constitution he was, while clerk of the district court, a collector and custodian of public funds?

To make default is to fail to keep a promise or perform an obligation at the time it is due. Such a failure may result from inability to perform the duty or to keep the promise made, or it may result from negligence or carelessness, or it may be the result of a criminal intent. But, if the failure to perform the duty or to keep the promise made is the result of either of these reasons, the party is still in default; and a collector and custodian of public money or property is "in default" within the meaning of this section of the constitution if he collects such money or property and retains it or fails to pay it over or deliver it to the party to whom the law declares it shall be paid or delivered and within the time fixed by statute for its payment or delivery.

In this connection I shall notice the excuses interposed by the respondent in his answer for his neglect or failure to pay over the fines and penalties in his hands to the county treasurer of Douglas county within ten days after their receipt. The respondent says that it was his purpose and *bona fide* intention at all times during his term to pay all the fines by him collected over to the proper officer within a reasonable time after the same were collected. This excuse is not good. It was not for the respondent, while clerk of the district court, to determine for himself what was a reasonable time in which to pay over to the county treasurer the fines and penalties collected. The statute does not prescribe that a clerk of a district court, to whom are paid fines and penalties, may pay them to the county treasurer of his county within a reasonable time, but within ten days after their receipt.

Another excuse of the respondent is that $364 of the fines and penalties which came into his hands were collected, if at all, by deputy of the respondent; that respondent did not know that the same had been received by the deputy until long after it was received, and after the deputy had left respondent's employment. This is not an allegation that the $364 never came into respondent's hands. It is not an allegation that he did not know that his deputy had received this $364 prior to the time respondent was a candidate for mayor. It is not an allegation which alleges that respondent did not know before his term of office expired that his deputy had received for him $364.

Another excuse is that $200 of the fines and penalties retained by the respondent were paid to his deputy during the time respondent was ill,—in the month of April, 1895,—and that respondent's attention was not called to the fact that said sum of money had been paid into his office during the remainder of his term of office. This excuse is likewise invalid. It was the duty of the respondent while clerk of the district court to keep a book or books in which all fines and penalties paid into his office should be entered, the time of their receipt by him, and the day of their payment to the county treasurer. But in this last excuse offered by the respondent he admits that the payment of the $200 to his deputy during respondent's illness was shown on page 226 in one of the dockets kept in his office. It was the duty of the respondent to see this docket.

A final excuse offered by the respondent for retaining the fines and penalties in his hands is that he held them in his hands in pursuance of a stipulation to that effect entered into between the attorney for Douglas county, attorney for the school board of the city of Omaha, and the attorney for the city treasurer of Omaha, as some dispute had arisen as to what particular board or tribunal or school district or municipality was entitled to these fines and penalties. This excuse will not do. The

statute was the finger-board which pointed to the county treasurer's office and in mandatory terms commanded the clerk of the district court to pay the fines and penalties in his hands to the county treasurer of Douglas county; and if any person or corporation claimed the right to those funds, that claim should be made to the county treasurer. The force and effect of a mandatory statute cannot be suspended by stipulation of parties.

I must not be understood from anything said here as imputing to the respondent any criminal intent. Indeed I think it is apparent from respondent's answer that he has at all times acted in good faith; that he has been guilty of no moral delinquency,—no evil intention; that he has at all times been able and ready and willing to account for and pay over the public funds in his hands. On the other hand duty compels me to say that I think this respondent has been guilty of negligence. Like all other men in all vocations of life, he has been careless. But the constitution does not, nor does it attempt to, make any distinction as to one's ineligibility to an office whether it arises from neglect, carelessness, or criminal intent. What the constitution says and what it means is that one who is in default as a collector and custodian of public money or property shall not be eligible to any office of trust or profit under the constitution or laws of this state; and, while I think the respondent was not guilty of any intentional wrong or fraud or crime, I have not the slightest doubt but that by reason of his carelessness and negligence he was at the time he was a candidate for the office of mayor "in default" within the meaning of section 2, article 14, of the constitution, if he was at that time a collector and custodian of public money or property.

The constitutional convention left it to the legislative department of the government to prescribe such civil or criminal penalties as it might see fit against one in default as a collector and custodian of public funds, but itself made the being in default by such a collector and

custodian as to such fund a political offense, and affixed as a penalty for the same incligibility to election and disqualification for holding an office of trust or profit while such default existed; and the cause or the intention which gave rise to such political offense is in such an inquiry as this wholly immaterial. If the party is in default as a collector and custodian of public funds then by the constitution he is guilty neither of any criminal nor civil offense, but is guilty of the political offense described in the constitution; and no excuse whatever can be heard in extenuation of that offense. If the public funds or property in such collector and custodian's possession had been stolen from him, or if it had been lost as the result of some circumstance wholly beyond his control, then, to prevent his being in default, he must make it good to the public treasury. This provision of the constitution under consideration is analogous to the statute which prescribes a penalty of $50 against any officer for taking fees in excess of those prescribed by statute for performing a duty of his office. And in *Cobbey v. Burks*, 11 Neb., 157, the court held that the mistake or ignorance of such an officer, where he had not been guilty of any evil intent, afforded him no defense to the action to recover such a penalty. This is doubtless the correct construction of the act. I have not been able to find any case where such an act was differently construed. A different construction of such a law as this would effectually destroy it, and it is upon the grounds of public policy that such acts are construed by the courts as in *Cobbey v. Burks, supra.*

I am aware that in *People v. Hamilton*, 24 Ill. App., 609, already referred to, it was said in effect that one was not in default because of his failure to make a payment required by law when there had been an honest intent on his part to pay, but this language of the court was *obiter*. It had nothing whatever to do with the point on which the decision in that case turned. We are also aware that the supreme court of Louisiana in *State v.*

*Reid*, 12 So. Rep. [La.], 189, said that "default," when used in connection with "disqualification for office," meant default with dishonor. I concede that this expression is good poetry everywhere, and good law when applied to the facts of the case in which it was used, but it has no applicability whatever to this case. The Louisiana court was not defining, nor attempting to define, the meaning of the term "in default," or any kindred term. In that case the constitution of Louisiana made one who had been a collector of taxes ineligible to office until he had obtained a discharge for the amount of collections made by him. Such a collector having been elected to an office, and *quo warranto* proceeding brought to test his title to the office, it was contended by the relator that the respondent had not collected the tax lists placed in his hands, and for that reason he was indebted to the state, and it was in this connection that the court said, in the constitutional disqualification to hold office is the idea not only of debt but of default with dishonor; not only that the collector owes but that he owes money collected and in his hands; not only that he is a debtor but a defaulter.

5. A final inquiry is, is a clerk of a district court a collector and custodian of public funds or property within the meaning of said section 2, article 14, of the constitution? I do not think he is. It is true that the respondent, while clerk of the district court, was a custodian of the fines and penalties received by him from the time he received them. For their loss he doubtless would have been liable upon his official bond. Had he embezzled them or converted them to his own use perhaps he would have been criminally liable. But the language of the constitution is not a "collector or custodian," but "collector and custodian." Unfortunately, we have not access to the debates of the constitutional convention and I do not know for what particular reason the framers of the constitution made the clause read "collector and custodian." It was said by counsel for the relator in his

oral argument in this case in this court that the consti-
tution should be read as though it was written "collector
or custodian." The courts are not at liberty to thus
change the context and make the disqualification of eli-
gibility to office apply to any other person than the one
the framers of the constitution made it apply. A col-
lector, within the meaning of this constitution, is a
public officer charged by law with the duty of exacting
and receiving payments of money or property due the
state or public. To make one a collector within the
meaning of this constitution it must not only be his duty
to collect or receive money or property due the state or
public, but it must be his legal duty. He must be armed
by law with authority to demand and enforce payment.
Now, while the respondent was clerk of the district court,
was by virtue of his office authorized to receive fines and
penalties which might be paid to him as clerk, yet no
statute of this state made it his duty to demand such
fines and penalties from the party owing them, or to en-
force, by any process whatever, the payment of such
fines or penalties. He was not invested with authority
to seize the property of the citizen who owed a fine or a
penalty and sell it for the purpose of realizing such fine
or penalty.

The demurrer should be carried back to the relation,
sustained, and the proceeding dismissed.

IRVINE, C.

In the interpretation of the written law the meaning
and intent of the lawgiver must be gathered from the
language used. It must be presumed that the framers
of the constitution were fairly familiar with the mother
tongue, and that in an instrument of that solemnity they
selected their words and forms of expression with some
care for the purpose of expressing their intent. We are
not at liberty to substitute for the meaning of the lan-
guage so by them deliberately chosen the meaning which
in our minds should have been expressed in order to

carry out the policy we attribute to them. Such liber-
ality of construction in effect substitutes for what has
been declared the law that which the courts think should
have been so declared. We must therefore weigh the
language used, imputing to the framers of the constitu-
tion deliberation and intelligence of diction, and give to
each word some force if practicable. These remarks are
expressive of axiomatic rules of construction, which,
however, are apt to be overlooked in the attempt to carry
out what is loosely styled the spirit of the written law,—
an operation frequently accompanied by such a disre-
gard of the English language that laymen, comparing
the statute with its exposition, come to regard the pro-
cess of construction as equivalent to destruction. If we
are to pay any attention to the letter of the law we must
conclude that a clerk of the district court is not a "col-
lector and custodian" of public money as to fines and
penalties received by him. We have no more right to
read the word "and" as if it were "or" than we have to
reverse the process and in the following phrase substi-
tute the conjunctive for the disjunctive between "money"
and "property," or to read the word "public" as if it were
written "private," or to interpolate a negative, or in any
other manner do violence to the constitution and effect
a judicial amendment. It is the duty of the clerk to
receive fines and penalties and within ten days pay them
over to the treasurer. I am not prepared to say that
because he is not charged with the duty and power of
exacting and enforcing payment he may not properly be
styled a "collector," but if the meaning of that word be
so extensive as to include an officer merely empowered
to receive and pay over, then to give any effect to the
word "custodian" we must hold that it signifies one who
is charged with a more permanent and responsible keep-
ing and care of money than devolves on any agent for
collection. And yet the latter is plainly the measure
of the clerk's power and responsibility. The fact that
ten days is allowed the clerk to pay the money to its

custodian, the treasurer, is of no significance. This is only a period fixed by law arbitrarily, for the sake of certainty, as one reasonably to be allowed for making the transfer, and it does not change the character of his possession. The statute attempting to transfer to the public the right of the owners of the other funds which the respondent is charged with retaining is very plainly violative of the constitution, for the reasons given by Judge NORVAL and Commissioner RAGAN. It follows that, in my opinion, the demurrer should be overruled, because the relation states no cause of action; and, as it is not in the nature of the case amendable, the cause should be dismissed. Entertaining this opinion, I feel that some of the other questions discussed are not necessarily involved in the decision, and prefer to express no opinion thereon.